ALONZO W. ALLEN *et al.*

*v.*

AMZI F. JACKSON *et al.*

*Filed at Ottawa November 11, 1887.*

1. TRUST—*arising out of a confidential relation—trustee undertaking to profit thereby.* A party may voluntarily assume a confidential relation toward another, and if he does so, he can not thereafter do any act for his own gain at the expense of such relation.

2. So when a person obtains the legal title to property by virtue of a confidential relation and influence, under such circumstances that he ought not, according to the rules of equity and good conscience, to hold and enjoy the beneficial interests of the property, a court of equity, in order to administer complete justice between the parties, will raise a trust by construction, and fasten it upon his conscience, and convert him into a trustee of the legal title, and order him to hold it, or to execute the trust in such manner as to protect the rights of the real party in interest.

3. A corporation acquired a tract of land subject to an incumbrance thereon, which it was to discharge, and laid the same out into lots, which it sold, making warranty deeds therefor. On bill to enforce the incumbrance, the lot owners applied to one who was a director and president of the corporation, and asked him if the company would protect them, and what steps they should take, and he assured them that the company would protect their rights, and directed them to pay no attention to the suit. Relying on this assurance, no defence was made and no steps taken to pay off the incumbrance, and the property was sold, and such officer acquired the legal title to the lots, and claimed the same adversely to the rights of the prior purchasers thereof: *Held,* that by directing such purchasers to make no defence, but to trust to the company, such officer voluntarily assumed a con-

fidential relation, and incapacitated himself from becoming the purchaser of the lots at the foreclosure sale to the detriment of the prior purchasers from the company, and that he took the property in the same situation it was when he assured the lot purchasers that their rights should be protected.

4. PURCHASERS—*subject to incumbrance*—*in case of sales in parcels where incumbrance is on an entire tract*—*marshaling assets.* A land company bought a tract of land, the purchase money of which was unpaid by its grantor, and which was an incumbrance to be paid by the company. The company laid the land out in lots, many of which it sold, and conveyed by warranty deeds. The original purchase money not being paid, a bill was filed by the holder of the incumbrance to have the property sold: *Held,* that the purchasers of the lots were entitled to have an account taken of all that had been paid, and for the payment of the balance to have the unsold lots of the company first sold, and should there still remain a balance due, to have the other lots sold in the inverse order of their alienation.

WRIT OF ERROR to the Circuit Court of La Salle county; the Hon. GEORGE W. STIPP, Judge, presiding.

Messrs. BULL, STRAWN & RUGER, for the plaintiffs in error:

In equity, the summary remedy for fraud is to convert the wrongdoer into a trustee and the one wronged into a *cestui que trust*, and then enforce the execution of the trust. Tiffany & Bullard on Trusts, 113, 115, 120.

But, independent of this, Jackson stood as the trustee of the creditors of the company. The directors are the primary agents of the corporation, and the relation of trustee and *cestui que trust* exists between them and creditors, and the fiduciary character of this relation requires of them the highest and most scrupulous good faith in their transactions for the corporation and creditors. Field on Corporations, 172, 397, 403; *Jackson* v. *Ludeling,* 21 Wall. 616; *Railroad Co.* v. *Kelley,* 77 Ill. 426; Thompson on Liability of Officers and Agents of Corporations, 395, *et seq.; Bank of St. Marys* v. *St. John,* 25 Ala. 566.

Jackson was president of the company at the time he purchased this property, for the corporation still existed, notwithstanding the appointment of a receiver. (*People* v. *Barnett,* 91 Ill. 422.) And the rule is universal that no person shall be permitted to purchase an interest in property when he has a

duty to perform, inconsistent with his character of purchaser on his own account. 1 Washburn on Real Prop. (2d ed.) *430; Tiffany & Bullard on Trusts, 152, 148, 149; Story's Eq. Jur. secs. 323, 328, 322; *Britton* v. *Handy,* 20 Ark. 381; *Torrey* v. *Bank of Orleans,* 9 Paige, 648; *Van Epp* v. *Van Epp,* id. 237; *Railroad Co.* v. *Kelley,* 77 Ill. 426; *Davis* v. *Hamlin,* 108 id. 39; 1 Leading Cas. in Eq. 62, note to *Keech* v. *Sandford; Railway Co.* v. *Poor,* 59 Me. 277; Thompson on Liability of Officers and Agents of Corporations, chap. 3, notes, sec. 8, p. 360.

Even if Jackson had not been connected with the company, making the statements he did with a view of obtaining the title thereby, would, in equity, render him a trustee. *Beach* v. *Dyer,* 93 Ill. 295; Perry on Trusts, sec. 166; 1 Story's Eq. Jur. (8th ed.) sec. 256; *Doyle* v. *Wiley,* 15 Ill. 576; *Trotter* v. *Smith,* 59 id. 240.

If a grantee obtains a deed by means of promises to hold the land for another, this is sufficient to raise a trust in favor of the latter, on the ground of fraud, and this may be proved by parol. 2 Washburn on Real Prop. (3d ed.) 451; *Dennis* v. *McCagg,* 32 Ill. 429; *Morgan* v. *Clayton,* 61 id. 35; *Strong* v. *Shea,* 83 id. 575; *Switzer* v. *Skiles,* 3 Gilm. 529; *Wright* v. *Gay,* 101 Ill. 233; *Brophy* v. *Lawler,* 107 id. 284; *Roller* v. *Spillman,* 13 Wis. 33.

Jackson can not excuse himself by saying his statements were the act of the company, for then equity would say: Your purchase was also the act of the company, to which you must look for reimbursement. But agency will not excuse a personal liability for fraud. Story on Agency, sec. 311; *Campbell* v. *Hillman,* 15 B. Mon. 508; *Allen* v. *Hartfield,* 76 Ill. 358; *Peck* v. *Cooper,* 112 id. 192.

Courts of equity will apply the same rule. *Reed* v. *Peterson,* 95 Ill. 288; *Ackerman* v. *Halsey,* 37 N. J. Eq. 356; *Arnot* v. *Biscoe,* 1 Ves. Sr. 95; *Seddon* v. *Connell,* 10 Sim. 86; Thompson on Liability of Officers and Agents of Corporations, chap. 3, notes, secs. 4, 21, p. 355.

Mr. Justice Scholfield delivered the opinion of the Court:

We have not had the benefit of any argument, in the present case, on behalf of the defendants in error, and we may, therefore, have misapprehended some of the facts; but as we have been able to gather them from the abstract and argument of plaintiffs in error, they are, so far as important to any question to be considered by us, in brief, as follows:

The Woodruff heirs owned a tract of land adjoining, or at least in the near vicinity of, the town of Marseilles, in La Salle county, which they contracted to sell and convey, for a consideration to be thereafter paid, to Roderick Clark. Clark was one of the organizers and incorporators of "The Marseilles Land and Water Power Company," and on the 2d of April, A. D. 1867, he conveyed the tract to that company. In June of that year the company caused the tract to be laid off into lots, and platted, and in that and the next succeeding year the complainants became the owners of certain of these lots through purchases from the company for valuable considerations paid, and title was conveyed to them by warranty deeds of the company. The payments not having been made to the Woodruff heirs for the tract of land, as provided for by their contract with Clark, on the 3d of October, A. D. 1878, they filed their bill in chancery in the circuit court of La Salle county, against the Marseilles Land and Water Power Company and the complainants and others, praying that it be decreed that the amount due on the contract with Clark be paid within a day to be named, and that in default, the company's rights thereunder be terminated, and the parties in possession surrender that possession. Decree was rendered on the 10th of January, A. D. 1881, in conformity with the prayer of the bill; and the amount due not being paid, as provided by the decree, on the 18th of January, A. D. 1881, it was finally decreed that complainants in the present suit surrender possession, etc.

Amzi F. Jackson was a director in the Marseilles Land and Water Power Company from 1875, and the president of that

company from April, 1880. While acting as director and president of the company, and after the complainants in the present suit had been served with summons in the suit by the Woodruff heirs, against them and the Marseilles Land and Water Power Company, they applied to him to know, in substance and effect, whether the company would protect them in that suit, and what steps they should take to protect their rights to the property they respectively held under their several warranty deeds from that company, and they were assured by him that the company would protect their rights, and that they should pay no attention to the suit. Relying on this assurance, complainants made no defence to that suit, and made no effort to pay the money found due by the decree. A portion of the Woodruff heirs conveyed their interest in the tract to Eames, on the 23d of December, A. D. 1880, and on the 29th of October, A. D. 1881, Eames and the remaining Woodruff heirs sold and conveyed to Jackson. A receiver of the Marseilles Land and Water Power Company was appointed on the 30th of December, A. D. 1880. The present bill was filed on the 29th of September, A. D. 1882, and summons was issued and served the same day, and on the 3d of November, A. D. 1882, Amzi F. Jackson conveyed to Hiram Jackson. The court below, on hearing, decreed that the bill be dismissed.

A party may voluntarily assume a confidential relation towards another, and if he shall do so, he can not thereafter do any act for his own gain at the expense of that relation. Kerr on Fraud and Mistake, (Bump's ed.) 151, 179; *Reed et al.* v. *Peterson,* 91 Ill. 295. Where "a person obtains the legal title to property by virtue of a confidential relation and influence, under such circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interests of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust, by construction, out of such circumstances or relations, and this trust they will fasten

upon the conscience of the offending party, and will convert him into a trustee of the legal title, and order him to hold it, or to execute the trust in such manner as to protect the rights of the defrauded party, and promote the safety and interests of society." Perry on Trusts, (1st ed.) 166. See, also, Kerr on Fraud and Mistake, (Bump's ed.) 150; *Beach et al.* v. *Dyer et al.* 93 Ill. 295; *Doyle* v. *Wiley,* 15 id. 576; *Trotter* v. *Smith et al.* 59 id. 240; Tiffany & Bullard on Trusts, 113, 115, 120.

It was the duty of the Marseilles Land and Water Power Company to protect the interests of the complainants, because it had so covenanted. The position of Jackson was such that he could have known, and it was his duty to know, whether the company was able to do so or not. The complainants were therefore authorized to believe and rely upon his representations in that regard. By directing them to make no defence, but to trust to the company, he voluntarily assumed a confidential relation; and it would seem to be a palpable violation of the principles of natural justice, that he, having induced inaction on their part until it was too late to preserve their rights, should be allowed to then become, himself, the purchaser of the property. It is equitable that as respects their rights, the title to the property should be held to be in precisely the same situation that it was when he assured the complainants that their rights should be protected. What rights they then had they now have. They then would have been entitled to have had an account of all that had been paid, and that in selling the property for the payment of the balance due, that part then unsold by the company should be first sold, and should there still remain a balance, the lots should be sold for its payment in the inverse order of their alienation, as in the case of successive sales of lands mortgaged when foreclosure is decreed. *Iglehart et al.* v. *Crane et al.* 42 Ill. 261.

The decree is reversed, and the cause remanded for further proceedings consistent with this opinion.

*Decree reversed.*