178 . GRUHN v. RICHARDSON et al.

Syllabus.

SIMON GRUHN

v.

NANCY R. RICHARDSON et al.

Filed at Springfield April 5, 1889.

1. VENDOR'S LIEN—not assignable—lost by transfer of debt. The right to enforce a vendor's lien is personal, and is therefore not transferable. It ceases to exist when the vendor sells and indorses the note representing the purchase money, although the transfer is made with the consent or upon the advice of the debtor.

2. HOMESTEAD—what will defeat the right—effect of transfer of note given for purchase money—fraudulent acts. A person purchased a house and lot, giving his promissory note for the purchase money, after which he conveyed the premises to his wife, from which time the property was occupied by them both as their homestead. It was of less value than $1000. A third person, at the husband's request, bought the note given for the purchase money. It was held, that the purchaser of the note acquired no equity as against the wife's homestead. Even if she had owed the note herself, and had requested such third party to pay the same, his doing so could have given him no right as against her estate of homestead.

3. Even the fraudulent acts of the party entitled to a homestead are not allowed to divest that right.

4. TRUST—voluntarily assumed—not to be repudiated. G., having a small claim against a debtor who was being harassed by creditors, under the guise of friendship falsely advised the debtor and his wife that the creditors would take their homestead, which was in the wife, unless they mortgaged the same to him, and promised that if they would mortgage the same, he would, when he acquired the title, convey to the debtor's wife, and thereby induced them to execute a mortgage for the sum he claimed, and afterward induced them to give a fictitious note and mortgage to a third person for $1000, which G. afterward procured to be assigned to himself, and obtained a decree of foreclosure and sale, professedly for the benefit of the wife, but afterward refused to convey to her, disavowing and denying the trust: Held, that G. could not be allowed to repudiate his assumed trust, and that a court of equity would compel him to convey to the wife, or set aside the mortgages and sale of the property to him.

5. SAME—Statute of Frauds. Where a party, by voluntarily assuming a confidential relation, as, that of a trustee, to save the homestead of

another, and by means of confidence thus inspired obtains the title thereto, and refuses to perform his promises, the law will raise a constructive trust, which a court of equity will enforce, and the Statute of Frauds will have no application.

APPEAL from the Circuit Court of Macoupin county; the Hon. JESSE J. PHILLIPS, Judge, presiding.

Messrs. ANDERSON & BELL, for the appellant:

The complainant is barred of the relief sought, by her negligence. She had no right to blindly adopt the representations of Gruhn, instead of seeking information which was accessible to her. *Hicks* v. *Stevens*, 121 Ill. 186; *Young* v. *Young*, 113 id. 432; *Tuck* v. *Downing*, 76 id. 71; Story's Eq. Jur. sec. 191.

The legal presumption is, that deeds and mortgages are made in good faith, and without fraud. *O'Neal* v. *Boone*, 82 Ill. 589.

Parol evidence to set aside a deed or mortgage must be clear and convincing. *Wilson* v. *McDowell*, 78 Ill. 514.

The violation of a parol agreement to convey or reconvey land will not constitute such a fraud as to take the case out of the Statute of Frauds. *Young* v. *Young*, 113 Ill. 430; *Rogers* v. *Simmons*, 55 id. 76; *Perry* v. *McHenry*, 13 id. 227; *Dunbar* v. *Bonesteel*, 3 Scam. 32.

If the mortgage is to be rescinded or held for naught, then appellees must return to appellant all that in equity is his. Before a party can rescind a contract for fraud, he must return, or offer to return, the consideration received. *Smith* v. *Brittenham*, 98 Ill. 188; 109 id. 540.

Messrs. RINAKER & RINAKER, for the appellees:

The circumstances of the execution of the mortgage, alone, are enough to brand it as fraudulent. There was no actual danger to the homestead, as it was then worth only $800 or $900, and was exempt from any judgment against the husband.

If Gruhn obtained the mortgages upon false representations and promises, he can in no case disregard them, although he may have been compelled to give up part of his security, and although the property may have since depreciated in value.

The vendor's lien, evidenced by the Kemper note, which Kemper might have enforced, not only was not in fact, but could not in law, have been transferred by him to Gruhn. *Moshier* v. *Meek,* 80 Ill. 79.

If Gruhn intentionally misrepresented the facts in order to mislead or entrap or cheat appellees, or to obtain an undue advantage of them, there is positive fraud, in the truest sense of the term. Story's Eq. Jur. secs. 192, 330.

If, and especially at his request, "confidence is reposed, and one party has it in his power, in a secret manner, for his own advantage, to sacrifice those interests which he is bound to protect, he will not be permitted to hold any such advantage." (Story's Eq. Jur. sec. 323.) In the one case his advantage is the result of actual fraud; in the other case his position is obtained by constructive fraud.

The defense of the Statute of Frauds is no answer to appellees' case, and the facts proven.

Mrs. Richardson received no consideration whatever for the execution of these mortgages, except Gruhn's promise, based on his false or mistaken statement of danger to her homestead, to use it only to save the homestead for her. Can he, with full performance on her part, repudiate his promise and retain the benefit so obtained, because his promise was only verbal?

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This appeal brings before us for review a decree of the circuit court of Macoupin county, setting aside certain mortgages, and a sale thereunder, made pursuant to a previous decree of that court.

The case made by the evidence on behalf of the complainant is, in substance, this: In December, 1881, John Richardson,

who had all his life been a farmer, and who had consequently no previous experience in trade, and who had no practical knowledge in that respect, sold his farm for $8000, and engaged in trade in the village of Medora, in Macoupin county. He first tried the grocery business, but that soon resulting disastrously, he abandoned it for the clothing business, and a like result as in the grocery business speedily followed in this business. He became the owner of several village lots,—among others, of lot 4, in block 19, in Rice's third addition to the village,—which he purchased of William Kemper, but only partially paid for. On the 19th of March, 1883, Kemper conveyed the lot to Richardson, and at the same time, Richardson made his note of that date, payable to Kemper, for $550, (the balance due upon the lot,) twelve months after date, with eight per cent interest. There was, and still is, a dwelling house upon the lot, and Richardson immediately took possession of the lot and made his residence in the dwelling house. On the 3d day of April, 1883, he conveyed the lot to his wife, Nancy R., the complainant, and the lot was then, and it has been ever since, occupied by them as and for their homestead, and it is of less value than $1000.

On the 19th of October, 1883, the Bank of Medora recovered a judgment against John Richardson for the sum of $2223.46, and at that time he was indebted to various other parties in different amounts, the aggregate exceeding his ability to pay. On the 24th of November following, he was served with summons at the suit of Joseph Hill, upon which Hill obtained judgment in December thereafter, and at the time that suit was commenced other suits were threatened, which were, several months afterward, prosecuted to judgment. Simon Gruhn had become the owner, by assignment, of a promissory note made by McKernan & Richardson on the 21st of March, 1883, to Ryan & Elwood, for $625, with eight per cent interest from date, due May 1, 1883, upon which a credit of $300, paid April 24, 1883, was indorsed. Gruhn also claimed that Rich-

ardson was at the same time indebted to him in the further sum of $300.

On the 28th of November, 1883, Gruhn, having obtained the confidence of John and Nancy R. Richardson, and induced them to believe that he was their friend, anxious to aid them in their financial embarrassments, and that he was possessed of ample knowledge of the law to correctly instruct and advise them therein, went to them and represented to them that the only way by which they could save their homestead from the creditors of John, was to mortgage the same, together with other village lots, to him; that the creditors could set aside, as fraudulent, the conveyance by John to Nancy R., and sell the homestead, but that if they would mortgage the homestead, together with the other village lots, to him, he (Gruhn) could and would hold it against the other creditors, for Nancy R., and when he should obtain a title thereto, through a sale and purchase, he would convey it to her. He represented that it was indispensable that they should act promptly and secretly, and warned them against speaking to others of what they did. They were ignorant of their legal rights in regard to the homestead, and believed in and relied upon the truthfulness of what he said, and thereupon, thus influenced and controlled, Richardson made his promissory note to Gruhn, payable twelve months after date, for $300, with interest at eight per cent per annum from date; and he and his wife, Nancy R., then also made a mortgage to Gruhn, of the homestead and other village lots, to secure the balance due on the Ryan & Elwood note and this $300 note. Two days afterwards,—namely, on the 30th of November, 1883,—Gruhn informed the Richardsons that his mortgage was not large enough to protect the homestead against Richardson's creditors, and persuaded and induced them to execute a promissory note to George Wright, to whom neither of them was indebted, for $1000, payable, with eight per cent interest, one year after date, and to execute a mortgage on the homestead to secure it, saying, (and they

believing what he said,) that this mortgage would help secure the homestead. Wright never claimed that anything was due him on account of this transaction, but always admitted that he entered into it as a mere matter of accommodation.

On the 2d of April, 1884, Gruhn made an arrangement between William Kemper, George Wright and John Richardson, whereby Kemper let Gruhn have his note on Richardson, indorsed by him without recourse, and Gruhn then exchanged that note with Wright for Wright's note and mortgage, which Wright indorsed and delivered to him. The agreement between Kemper and Gruhn was, in substance, that Gruhn was to collect the money for Kemper if he could. Wright claims no interest in the Kemper note, and has delivered it to Richardson's attorney.

On the 20th of January, 1885, Gruhn filed his bill to foreclose his mortgage and the Wright mortgage, in the circuit court of Macoupin county, against John Richardson and Nancy R. Richardson, alleging therein, among other things, the assignment of the Wright note and mortgage to him, and his ownership thereof. Summons was properly served upon the Richardsons, but they were persuaded by Gruhn to not appear and make defense, he representing to them that he knew best what to do—that he was acting for them, and would attend to their interests better than they could themselves; that he would bid in the property at the sale to be made under decree of foreclosure, and afterwards convey the homestead to Nancy R. A decree *pro confesso* was rendered on the 19th of February, 1885, finding that there was due Gruhn, on the mortgages, $1942.43, and directing a sale of the mortgaged premises for the payment of the same.

On the 28th of May, 1885, Gruhn made another agreement with Kemper, whereby Gruhn gave Kemper, for Kemper's note on Richardson, his note for $300, payable absolutely, and his note for $200, in regard to which it was agreed that in the event either that Gruhn should assign his certificate of pur-

chase, which it was contemplated he would obtain at the fore-
closure sale, or convey the premises, within one year after the
sale, for more than enough to pay his own demands against
the property, with interest, then he was to pay the excess to
Kemper to the extent of the balance due him from Richardson.
John Richardson acquiesced in this arrangement, but there is
no evidence affecting Nancy R. Richardson by it, and she ex-
pressly denies all knowledge of it.

Gruhn denies that he agreed to secure a homestead for
Nancy R.; that he used other persuasions to induce them to
sign the mortgage than his claims as a general creditor, a
neighbor and a friend of John Richardson. He denies that
he did or said anything to induce the Richardsons to not ap-
pear and defend the foreclosure proceeding, and he denies that
he, at any time, represented himself to have special law knowl-
edge in respect of questions pertinent to their rights in the
premises. He was, to some extent, sustained by the evidence
of other witnesses.

The court below adopted the view that the evidence sus-
tained the case made by the evidence on behalf of the complain-
ant, and after having carefully considered the entire record,
we are unable to say that there is clearly error in that ruling.
It would subserve no useful end to recapitulate and comment
upon the evidence in detail, and we shall therefore proceed to
an examination of the legal principles applicable to the view
of it, as expressed.

The right which Kemper had to enforce a vendor's lien was
personal to himself, and was ended the moment that he in-
dorsed the note and delivered it to Gruhn, notwithstanding
Richardson consented to or advised that transfer. (*Richards*
v. *Leaming*, 27 Ill. 432; *Keith et al.* v. *Horner*, 32 id. 524;
*McLaurie* v. *Thomas*, 39 id. 291; *Lehndorf et al.* v. *Cope*, 122
id. 333.) But no attempt was ever made to enforce a vendor's
lien. Kemper filed no bill for any purpose, and the bill of
Gruhn was only to foreclose mortgages for the payment of

promissory notes (not including that of Kemper) described in the mortgages, and the agreement subsisting between Gruhn and Kemper, at the time of the filing of the bill and obtaining the decree of foreclosure, simply was that Gruhn would collect Kemper's note if he could. He took a decree for the amount of indebtedness secured as appeared upon the face of the mortgages, and accruing interest, and this included the $1000 of fictitious indebtedness, and the accruing interest thereon; and the notes which Gruhn subsequently gave to Kemper, seem to assume that $300 of the amount is to take the place of so much of the fictitious indebtedness, inasmuch as the $300 note was payable absolutely. The $200 note has not been paid, and is not to be paid unless the amount shall be realized hereafter in the way indicated in the agreement. It is manifest that in all this Gruhn has acted voluntarily, and for what he doubtless supposed would subserve his own interests. He knew that the vendor's lien could not be transferred to him, because he is charged with a knowledge of the law; and Nancy R. never consented that any part of the Kemper debt should be substituted for and take the place of so much of the fictitious note to Wright. If the Kemper lien was to be enforced, it is not perceived that it could make it any less burdensome to Nancy's homestead that it should be done by Gruhn. But it was important to Gruhn to get the Kemper claim out of his way, for, having priority, it depreciated his mortgage security by that amount, and so the entire transaction was manifestly to benefit him, alone; and he is not entitled to any claim of merit, because it was impossible to thus benefit himself without extinguishing the vendor's lien upon the homestead, and to that extent benefiting Nancy R.

The indebtedness to Kemper was not that of Nancy R. The lien imposed no personal obligation upon her, and so when it was removed without her act, she incurred no liability thereby. But even if she had owed the debt herself to Kemper, and had personally requested Gruhn to pay it, his paying could have

given him no rights as against her estate of homestead. (*Winslow* v. *Noble*, 101 Ill. 194; *Eyster* v. *Hathaway*, 50 id. 522.) Even the fraudulent acts of the party entitled to a homestead are not allowed to divest that right. (*Leupold et al.* v. *Krause*, 95 Ill. 440.) The case made is, as we think, governed by the ruling in *Allen et al.* v. *Jackson et al.* 122 Ill. 567.

Gruhn assumed, voluntarily, a confidential relation,—in legal contemplation, that of trustee for Nancy R. Richardson, to secure her homestead,—and he shall not now be allowed to deny his trust. He knew that she confided in him, and believed his representations to be true, and that solely because she did so confide and believe, she executed the mortgages. Having since repudiated his assumed trust, she was justified in filing the present bill. He can not be allowed to enjoy a personal advantage by saying that he was not entitled to the confidence he induced her to place in him.

*Wolford* v. *Herrington*, 74 Pa. St. 311, is quite analogous to the present case. There, land was advertised to be sold on a judgment against John Wolford. Herrington went to the wife of Wolford, and asked her if she knew that the land was to be sold. She said they could not sell it, for she had a deed. He said there might be some trouble, and she had better let it be sold, and let him buy it in for her. She said, in that case she could get the money from Mr. Randolph. He said that Randolph would need the money before he would, and that he would bid it in and pay the money, and allow her two years to pay him back the money, with interest. She assented to this finally, and he bought the land at the sale, but he afterwards refused to allow redemption to be made, and to convey as he had agreed. The court, speaking through SHARSWOOD, J., said: "Her testimony alone, if believed by the jury,—and there was no contradiction of it,—showed a clear case of fraud on the part of Herrington, within our late decisions of *Beegle* v. *Wentz*, 5 P. F. Smith, 369, and *Boynton* v. *Housler*, 23 id. 453. She had a claim on the land in her own right by an un-

recorded deed—whether good or bad, conveying a good title or not, is unimportant; and these cases settle that where one having any interest is induced to confide in the verbal promise of another that he will purchase for the benefit of the former at a sheriff's sale, and in pursuance of this allows him to become the holder of the legal title, a subsequent denial by the latter, of the confidence, is such a fraud as will convert the purchaser into a trustee *ex malaficio.*" See, also, Wharton on Agency. sec. 240, and Bigelow on Fraud, p. 231.

The Statute of Frauds has no application to the present case. The trust is not express, but is raised by construction. *Allen et al.* v. *Jackson et al. supra;* Kerr on Fraud and Mistake, (Bump's ed.) 151, 179; *Reed et al.* v. *Peterson,* 91 Ill. 295; *Haigh* v. *Kaye,* Law Rep. (7 Ch. App. Cas.) 469; Bispham's Eq. sec. 231.

The decree below must be affirmed.

*Decree affirmed.*