Catharine Scattergood, Executrix of the last will and testament of Rebecca B. Cummins, deceased, *v.* Helen T. Kirk, Appellant.

*Wills—Issue devisavit vel non—Undue influence.*

On the trial of an issue devisavit vel non where it appears that proponent lived with the testatrix who was eighty-nine years of age at the time of her death, and occupied towards her a close confidential relation; that she had her own lawyer prepare a will and codicil by which she took the whole of the estate, and the evidence is not clear that testatrix knew when she signed the papers that they were of testamentary character, it is incumbent upon the proponent to satisfy the jury that testatrix fully understood the nature of her act, and that it was the result of her own purpose and not that of her confidential advisor.

*Wills—Execution—Witnesses.*

Where a will is witnessed by two subscribing witnesses who were present at its execution, it is not rendered invalid by the fact that a third person signed as a witness who was not present at its execution, and had never been requested to sign it by the testator.

Argued March 22, 1899. Appeal, No. 2, Jan. T., 1899, by Helen T. Kirk, from judgment of C. P. No. 1, Phila. Co., March T., 1898, No. 410, on verdict for plaintiff. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Issue devisavit vel non.

The facts appear by the opinion of the Supreme Court.

Defendant's first point is given in full in the opinion of the Supreme Court. The fourth point asked instruction that the signature of Dr. Millick invalidated the will.

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1, 2) refusal of defendant's first and fourth points, quoting them.

264 SCATTERGOOD *v.* KIRK.

*E. Hunn Hanson*, for appellant.—The burden was on the proponent to show that no undue influence was exercised on the testatrix: Cuthbertson's Appeal, 97 Pa. 163; Boyd v. Boyd, 66 Pa. 283; Wilson's App., 99 Pa. 545; Hoghton v. Hoghton, 15 Beav. 278; Miskey's App., 107 Pa. 611; Worrall's App., 110 Pa. 349.

*Albert E. Peterson*, for appellee, cited Cuthbertson's App., 97 Pa. 163; Frew v. Clarke, 80 Pa. 170; Caldwell v. Anderson, 104 Pa. 199; Linton's App., 104 Pa. 228.

OPINION BY MR. JUSTICE DEAN, July 19, 1899:

This was an issue certified to the common pleas by the orphans' court, to determine, whether what purported to be the last will of Rebecca B. Cummins was in fact and law her last will and testament. The testatrix, at her death, August 17, 1897, was in her eighty-ninth year; had never married; was the owner of a house at 321 South Eighteenth street, which was of considerable value, besides, was the owner of valuable personal property consisting of money and securities. She lived in this house at the time of her death, and had lived in it for twenty years. For some years before her death, one John Walker and his wife occupied the house as tenants; the testatrix boarded with them, and they cared for her rooms. The wife of the tenant having died in 1895, a widow, Sarah E. Saurman, took her place as housekeeper and also cared for Miss Cummins; this continued until October, 1896, when Catharine Scattergood, by consent of the housekeeper, took up her abode in the house. She was about seventy-five years of age, and a first cousin of testatrix. Before the death of Miss Cummins, both Walker and Mrs Saurman left the house; after Mrs. Scattergood entered, she became the companion and confidant of the testatrix, as well as her business adviser in her affairs other than legal. A. E. Peterson, Esq., a reputable member of the bar, was the lawyer and professional adviser of Mrs. Scattergood. On the 23d of December, 1896, she requested Mr. Peterson to draw a will for Miss Cummins, who wanted a will drawn in her (Mrs. Scattergood's) favor. The will was drawn, giving to Mrs. Scattergood one half the estate after payment of debts, and the other half to Emma N. and Gabrielle Clements; Mrs. Scattergood was appointed sole

executrix of this will. The attesting witnesses to the signature of Miss Cummins are Joseph E. Walker, S. E. Saurman and Dr. John W. Millick, the latter subscribing it as attending physician. On the 26th of January, 1897, Mr. Peterson, at the request of Mrs. Scattergood, drew a codicil to the will, in which the testatrix revoked the bequest to the Clementses, and gave the whole to Mrs. Scattergood. This codicil is witnessed also by Walker and Mrs. Saurman, but Dr. Millick does not join with them. Mr. Peterson had no communication personally with the testatrix, either before or after the execution of the will and codicil. He acted solely at the suggestion of his own client, Mrs. Scattergood, who professed to acquaint him with the wishes of the testatrix. While Walker and Saurman, the two subscribing witnesses, testify that they saw the testatrix sign the paper, and affixed their signatures as witnesses, it was not read to her in their presence, nor did they know at the time the writing was a will; and the testatrix in no way indicated that she knew it was; that Mrs. Scattergood prevented Walker from looking at it. In fact, their testimony tends to show, that both they and the testatrix believed the paper was other than a will. Dr. Millick, the third witness to the will, testifies, that he did not see testatrix sign the paper; that he signed as a witness at his office where Mrs. Scattergood presented the paper and asked him to sign it. Besides this evidence tending to show ignorance of the nature of the instrument by the testatrix, it was scarcely disputed, that the relations between Mrs. Scattergood and the testatrix were of the most confidential character. Mrs. Scattergood herself admits this. Then, in addition to the fact of extreme old age and physical feebleness, there is abundant evidence tending to show that Mrs. Scattergood was her adviser in all her business affairs. In view of this and other evidence, counsel for contestant at the trial submitted this written request for instructions:

" If you shall find from the testimony that from about November, 1896, to August, 1897, Mrs. Scattergood lived in the house and company and had the care of Miss Cummins; that the latter was eighty-eight years of age, and had the bodily infirmities incident to such age; that Mrs. Scattergood gave instructions to her own lawyer from which the will and codicil in dispute were drawn, and that she was a beneficiary under

the former and the sole beneficiary under the latter, then it was incumbent upon her to show affirmatively in this suit that Miss Cummins, with respect to the two papers in dispute, had advice independent of any from Mrs. Scattergood, and that she also had a full understanding of the effect of the two papers. This not having been done, I direct you to render a verdict for the defendant."

The learned judge of the court below refused the point, and although the charge is a most careful and elaborate one he nowhere raises and affirms the proposition embraced in the point. We are of opinion it was error, as the evidence stood, to negative the point, and we cannot but think that appellant's case was thereby grievously prejudiced. True, there was evidence on part of the plaintiff that the testatrix was a woman of firmness and inflexibility of will, and not likely to be unduly influenced by her adviser and confidant, but there was also uncontradicted evidence that she was not exempt from the mental infirmities of extreme old age. Although testamentary incapacity was not alleged, the undisputed facts fully warranted contestant's counsel in presenting the point. On these undisputed facts, we are clearly of the opinion they were sufficient to raise a presumption of undue influence on part of Mrs. Scattergood, and the burden was on her to rebut this presumption by showing affirmatively, that the testatrix understood the nature of the instrument she signed, and that her adviser and beneficiary exercised no undue influence to impel her aged relative to give to her, her whole estate. The evidence offered did not outweigh or rebut the presumption. An examination of the whole of it, seems to us to indicate a failure on the part of the learned judge to give that prominence to the question of undue influence which it demanded. He says, in the closing words of the charge : " The main question, I think everybody will admit, is whether Miss Cummins was falsely told that the paper which purports to be the will was something else when she signed it, and was falsely told that the paper that turned out to be the codicil was something else when she signed it." This, undoubtedly, was one of the questions raised by the evidence ; but whether Mrs. Scattergood had taken advantage of the confidential relation she bore to her aged relative to unduly influence her to make a will in her own favor was a question

just as prominently raised. Says 1 Redfield on Wills, page 515, quoted approvingly by this Court in Boyd v. Boyd, SHARSWOOD, J., in 66 Pa. 283 : " Where the party to be benefited by the will had a controlling agency in procuring its formal execution, it is universally regarded as a very suspicious circumstance, and one requiring the fullest explanation." The same rule was adopted in Cuthbertson's Appeal, 97 Pa. 163, Wilson's Appeal, 99 Pa. 545, Armor's Estate, 154 Pa. 517, and other cases, especially Yardley v. Cuthbertson, 108 Pa. 395, where all the authorities are cited and discussed. And as said in Darlington's Estate, 147 Pa. 624 : " The confidential relation is not all confined to any specific association of the parties to it. While its more frequent illustrations are between persons who are related as trustee and cestui que trust, guardian and ward, attorney and client, parent and child, husband and wife, it embraces partners and copartners, principal and agent, master and servant, physician and patient, and generally all persons who are associated by any relation of trust and confidence." The peculiarly close and confidential relation is fully admitted by Mrs. Scattergood.

We then have these established facts : In 1888, when the testatrix was nine years younger, she had made a will in which Mrs. Scattergood was not a beneficiary ; in 1896, she, by a way in itself unusual, becomes an inmate of testatrix's home, and almost immediately assumes the control of the house and servants ; attaches herself to the person of her benefactress ; takes charge of her money, some $4,000, and claims it as a gift ; goes to her own lawyer, and has him draw a will giving to her one half the estate ; then, in about a month, has him draw a codicil giving to her all of it. Then her declaration to one of the witnesses soon after she became an inmate of the house : ". . . . Everything else I mean to have ; I am the next of kin. I have consulted a lawyer ; I know my rights, and I mean to maintain them. When she dies I am going to take her to Wilmington, and after that if any one comes in this house and tries to take anything out of it, they will have to deal with me." This conversation was not denied by Mrs. Scattergood, and may therefore be assumed correct. In connection with the circumstances which followed, it shows a grim determination on the part of a forceful and domineering woman to attain her ends, without

much regard to the means.   This may be the subject of future denial or explanation; we take the evidence as it is before us.

We think, as the case stood, when the court charged the jury, appellant's counsel was entitled to an affirmance of his first point.

Of course, at another trial, the second question, as to the exercise of undue influence, by the presentation of other evidence on part of appellee, may present a different aspect, and her explanation may be wholly satisfactory to the jury; that is, they may be convinced no undue influence was exercised by her to secure the estate; but in any view of the case, taking the admitted facts, the jury must pass upon the evidence, and be instructed that, occupying the relation towards testatrix that she did, and being the sole beneficiary under the will and codicil, it is incumbent on Mrs. Scattergood to satisfy them that testatrix fully understood the nature of her act, and that it was the result of her own purpose and not that of her confidential adviser.

As to the wholly unwarranted signature as a witness, by Dr. Millick, we are of opinion that, although it is evidence tending to throw suspicion upon the conduct of Mrs. Scattergood, yet, as there were two competent witnesses without him, the illegal act did not of itself affect the validity of the instrument, and the court committed no error in so ruling.

The judgment is reversed and a venire facias de novo awarded.