## EWING *et ux.* v. EWING.

### No. 1276.   Opinion Filed September 11, 1912.

### (126 Pac. 811.)

TRUSTS—Frauds, Statute of—Constructive Trusts—Evidence. Where A., as agent for the G. heirs, was authorized by them to sell their farm of 142 acres and improvements thereon for $14,000 net, and A. thereafter induced his brother J., who lived in another state and knew nothing of the value of that, or similar property in the surrounding country, to come to Oklahoma for the purpose of buying it, which he did, and where A. suppressed that $14,000 was all that was asked for the whole tract and induced J., who relied upon his honesty, to believe that only said tract of land, less one certain five acres in one corner, including the improvements, could be bought for $14,000, which was false, and that A. and wife would take a two-sevenths interest therein if J. would purchase said tract, less the five acres, for that price, which he did, but which agreement they refused to perform, and where, unknown to J., A. thereafter took possession and caused the G. heirs to execute a deed for said five acres to A.'s wife, without further consideration, held, that as to said five acres A. acquired title thereto by fraud, that both are trustees ex maleficio of a constructive trust, and that the court did not err in decreeing a conveyance thereof to J.   Held further, that the fact that J. could not have been compelled to convey to A. and wife said two-sevenths interest, because of the want of evidence of their agreement so to do, does not entitle them to invoke the statute of frauds to exclude parol evidence of said agreement.

(Syllabus by the Court.)

Kane, J., dissenting.

*Error from District Court, Logan County;*
*A. H. Huston, Judge.*

Action by John D. Ewing against Amos A. Ewing and wife. Judgment for plaintiff, and defendants bring error.   Affirmed.

. *Virgil M. Hobbs* and *Devereux & Hildreth,* for plaintiffs in error.

*Burford & Burford,* for defendant in error.

TURNER, C. J.   On January 10, 1908, John D. Ewing, defendant in error, sued Amos A. Ewing and Ella K. Ewing, his wife, in the district court of Logan county to set up a constructive trust.   His petition substantially states that on August 21, 1907, certain Green heirs were the owners and in possession of a certain well-improved and cultivated tract of land (describing it) containing 142 acres, situated one-half mile west of the corporate limits of Guthrie, Logan county; that located on about five acres, and in the southwest corner thereof were a large two-story frame dwelling house, orchard, vineyard, windmill, tank, and other improvements of the value of about $3,000; that said heirs were offering to sell the entire tract for $14,000, and had authorized the defendant Amos A. Ewing to find them a purchaser; that said Amos A. Ewing is his brother, and lives in Guthrie, where he has been  for fifteen years, and at that time was in the real estate business and well acquainted with the value of farm lands in that vicinity; that plaintiff is a resident of Ohio, and has been for fifty years, with no knowledge of such values, or the value of said farm, all of which was well known to said Amos A. Ewing; that the relation between him and his brother was confidential and friendly and always has been; that up to the times hereinafter mentioned he believed him to be possessed of a good character for honesty and fair dealing, and reposed in him absolute confidence, and trusted his judgment as to the value of land in and about Guthrie: that, with the intent to defraud plaintiff, said Amos A. Ewing falsely represented to him that said farm, less the said five acres, could be bought for $14,000, less his commission of $500 on the sale which he would knock off, and that the same was cheap at that price, whereas, in truth and fact, said heirs had authorized him to sell the entire tract, including said five acres and all improvements thereon, for $14,000; that thereupon, believing said representations to be true, it was agreed between plaintiff and defendant that plaintiff would furnish the money and buy

said farm and that said defendant would take a two-sevenths interest therein for $4,000, to secure which he and his wife were to execute notes, payable to plaintiff, after which said tract would be cut up into lots and blocks and sold, and after said $4,000 had been repaid out of the proceeds the balance was to be prorated between them according to their several interests; that pursuant thereto said $14,000 was paid to said heirs, who executed to plaintiff a deed thereto, less five acres (describing it); that at the same time, unknown to plaintiff said defendant, with design to cheat and to defraud plaintiff, procured said heirs to execute a deed to his wife, the defendant Ella K. Ewing, conveying to 'her said five acres, including all improvements thereon, the only consideration therefor being said $14,000 paid by plaintiff; that said deed was made pursuant to a secret understanding between Amos A. Ewing and said heirs, in effect, that for $14,000 they would convey said tract of land, including the five acres, in such proportions and to such persons as the defendant Amos A. Ewing might direct; that said five acres and the improvements thereon thus held by the defendant Ella K. Ewing was thus bought and paid for by plaintiff, and was caused by the defendant Amos A. Ewing to be conveyed to his wife through a breach of confidence reposed in him by the plaintiff; that the same, in equity and good conscience, is his property, which said Ella K. Ewing holds in trust for him; that she paid no consideration therefor; and that defendants have refused to convey the same to plaintiff on demand. He prays for an injunction, and that he be decreed the equitable owner of said five acres and entitled to the fee therein, and that defendants be ordered to convey the same to him by proper deed, and for general relief.

For answer Amos A. Ewing pleaded, in effect, a general denial, and for a second defense admitted that the Green heirs had employed him as agent to sell the whole of said tract of land, including the five acres in controversy, for $14,000 net to them, with the understanding that all over said amount he could get for said land should be his commission. He alleged that plaintiff knew at the time he paid the.$14,000 that the same was the purchase price of said tract, less said five acres, which he says he

and the Green heirs agreed should be his commission. He specifically denied that he had conveyed the same to his wife in fraud, but insisted that the same was done pursuant to an antenuptial contract, whereby he owed her $1,250. For answer the defendant Ella K. Ewing, after general denial, pleaded, in effect, the same.

On the trial the court made the following special findings of fact:

"(1) That the plaintiff and the defendant Amos A. Ewing are brothers, and that the defendants Amos A. Ewing and Ella K. Ewing are husband and wife.

"(2) That, prior to August, 1907, the defendant Amos A. Ewing obtained from the Green family their net price on their entire farm of 142 acres, including the improvements; the same being $14,000.

"(3) That the defendant Amos A. Ewing induced the plaintiff to come to Oklahoma with a view of purchasing land, and showed him the Green farm.

"(4) That the defendant Amos A. Ewing represented to the plaintiff that only 137 acres of the farm was for sale, and that the five acres of the farm in the southwest corner thereof, including the improvements in the way of house, barn, outbuildings, etc., were not for sale, and that the price fixed upon the 137 acres was $15,000, but that that sum included a commission of $500 to him, and that he, of course, would take no commission, thereby leaving the net price $14,500.

"(5) That upon the suggestion and request of the defendant Amos A. Ewing, Fred Green, one of the owners of the land, and the one who was conducting the negotiations, told the plaintiff that said five acres and improvements were not for sale, and that the price of the remainder of the land was $14,500.

"(6) That the Greens, the owners of the land, never at any time raised the price of the land to $15,000, nor to $14,500, but under the arrangement, had a larger price been obtained, the excess over $14,000 was to be retained by the defendant Amos A. Ewing.

"(7) That the plaintiff refused to purchase for $14,500, and upon the suggestion of the defendant Amos A. Ewing the Greens informed plaintiff that he could purchase the 137 acres for $14,000.

"(8) That the plaintiff refused to purchase the 137 acres, unless the defendant would take an interest therein with him, and

that the defendants verbally agreed with him to take a two-sevenths interest therein, and that he should hold the title thereto, and that they should give their notes for such two-sevenths interest; and thereupon plaintiff contracted with the Greens for the purchase of the 137 acres at the price of $14,000; but the defendants did not carry out the plan to take the two-sevenths interest.

"(9) That the plaintiff examined the land and exercised his own judgment as to its quality and general value, but that the defendants, and especially the defendant Amos A. Ewing, urged and advised its purchase.

"(10) That the reasonable value of the entire tract, including the improvements, was $14,000, and that the reasonable value of the 137 acres, without the improvements, was $11,500, and that the reasonable value of the five-acre tract, including the improvements, was $2,500.

"(11) That the $14,000 paid by the plaintiff was the entire consideration paid to the Greens for the entire farm, and that upon the payment of the same to them they conveyed the 137 acres to the plaintiff, and the five acres, including the improvements, to the defendant Ella K. Ewing, and that no other consideration was paid by either of the defendants for said five-acre tract." .

And the following conclusions of law:

"From which the court concludes, as a matter of law, that the proposed purchase of the Green farm was a joint venture between the plaintiff and the defendants, and that each of the parties owed to the other the utmost good faith in the transaction, and that no one of them had the right to secure any private advantage to himself,. and that the plaintiff, having furnished the entire consideration for both tracts of land, is entitled to a conveyance of both tracts, and that the conveyance of the five-acre tract to the defendant Ella K. Ewing is held to be in trust for the plaintiff, and it should be decreed that she convey same to him."

Whereupon it was adjudged and decreed by the court that the defendant Ella K. Ewing "holds the title in fee to the five acres of land" (describing it), "in trust for the plaintiff, John D. Ewing, who is the equitable owner thereof and entitled to have the fee conveyed to him," and ordered that both. defendants join in a conveyance thereof to him.

Amos A. Ewing and wife bring the case here. The main question involved is whether the evidence is sufficient to charge defendants with a constructive trust. The trial court, in effect, held that it was, and ordered the trust executed by proper conveyance; and that was right. The precise question is whether, by suppressing the fact that the whole tract could be bought from the Green heirs for $14,000, and leading his brother, by virtue of the confidential relation existing between them, and under the circumstances, to believe, which was false, that said sum, which Amos induced him to pay, therefor, would only buy said tract, less the five acres, and causing the title thereof, without further consideration, to be deflected, in effect, to himself, Amos A. Ewing was guilty of obtaining that title by fraud. If so, a constructive trust was properly declared to exist; otherwise not.

In *Moore v. Crawford,* 130 U. S. 122, 9 Sup. Ct. 447, 32 L. Ed. 878, which was a suit to set up a constructive trust in a tract of land, Chief Justice Fuller, speaking for the court, said:

"Fraud, indeed, in the sense of a court of equity, properly includes all acts, omissions, and concealments which involve a breach of legal or equitable duty, trust, or confidence, justly reposed, and are injurious to another, or by which an undue and unconscientious advantage is taken of another. And courts of equity will not only interfere in cases of fraud to set aside acts done, but they will also, if acts have by fraud been prevented from being done by the parties, interfere and treat the case exactly as if the acts had been done. I Story, Eq., sec. 187."

From which we learn that if (John D. having paid the price of the whole tract) Amos A., by fraud, prevented the title to the five acres in controversy from passing from the Green heirs to John D., equity should treat this case exactly as if he had not done so, and by proper decree vest in John D. the title, of which, by such fraudulent prevention, he was deprived.

1 Perry on Trusts (section 166) says:

"There is another large class of trusts which arise from frauds committed by one party upon another. Thus, if one party procures the legal title to property from another by fraud or misrepresentation or concealment, or if a party makes use of some influential or confidential relation which he holds towards the owner of the legal title to obtain such legal title from him

upon more advantageous terms than he could otherwise have obtained it, equity will convert such party thus obtaining property into a trustee. If a person obtains the legal title to property by such arts or acts or circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interest of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust by construction out of such circumstances or relations; and this trust they will fasten upon the conscience of the offending party, and will convert him into a trustee of the legal title, and order him to hold it, or to execute the trust in such manner as to protect the rights of the defrauded party and promote the safety and interests of society. Such trusts are called constructive trusts."

3 Pom. Eq. Jur. (section 1053) says:

"In general, whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentations, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar means, or under any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein; and a court of equity has jurisdiction to reach the property, either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right, and takes the property relieved from the trust. The forms and varieties of these trusts, which are termed *ex maleficio* or *ex delicto,* are practically without limit. The principle is applied wherever it is necessary for the obtaining of complete justice, although the law may also give the remedy of damages against the wrongdoer."

The books are full of cases where the courts have applied this doctrine to a great variety of facts; but the facts here have no parallel anywhere, so far as we are able to learn. That the Green heirs were willing to part with the whole tract for $14,000, and that John D. would have received a deed therefor on payment of that amount but for the intervention of Amos A., goes without saying. And that Amos A., for his own profit, intervened and prevented that title from passing also goes without saying.

Quoting approvingly from Perry on Trusts, sec. 181, the court, in *Rollins v. Mitchell*, 52 Minn. 41, 53 N. W. 1020, 38 Am. St. Rep. 519, a suit to have declared a constructive trust in lands, said:

"Courts of equity will not only interfere in cases of fraud to set aside acts done, but they will also, if acts have by fraud been prevented from being done, interfere and treat the case exactly as if the acts had been done; and this they will do by converting the party who has committed the fraud and profited by it into a trustee for the party in whose favor the acts would otherwise have been done."

As in *Gilpin v. Nettograph Mch. Co.*, 25 Okla. 408, 108 Pac. 382, 29 L. R. A. (N. S.) 477, we held, where Ladd suppressed the fact that, by a secret agreement with the agent of the seller, he was to receive his share in the property to be sold for nothing, and induced Gilpin, who trusted in his honesty and good judgment, to purchase by leading him to believe that Ladd would join therein with him and others and pay for and share therein alike with them, that Ladd was guilty of fraud, so we hold here that when Amos A. suppressed the fact, by secret arrangement with the Green heirs, that they would take $14,000 for the whole tract, and induced John D., who confided in his honesty, to believe that said sum would purchase only said tract less the five acres, and John D. had refused to buy, unless Amos A. and wife would take a two-sevenths interest therein, which, to induce John D. to make the purchase, they agreed to do, without, as we infer, any present intention to, and which they never did, perform, but instead, after the sale, unknown to John D., they secretly secured a deed to and possession of the five acres for which John D's. money had paid, but which, by connivance with the Green heirs, had cost them nothing, Amos practiced a trick on John D. which is, in equity, a fraud, and made of himself a trustee *ex maleficio* of a constructive trust. This for the reason, among others, that Amos A. had violated a confidence justly reposed in him by John D., and in equity and good conscience will not be permitted to profit thereby. Where, as here, one of the parties to a transaction voluntarily assumes, as did Amos A., a confi-

dential relation to another, he cannot thereafter act for his own gain in violation of such relation.

This was held in *Allen et al. v. Jackson et al.,* 122 Ill. 567, 13 N. E. 840. In that case the corporation acquired a tract of land, subject to an incumbrance thereon, which it agreed to discharge, and laid the land out in lots and blocks and sold the same, making warranty deeds. On suit to enforce the incumbrance, the lot owners applied to the director and president of the corporation and asked him if the company would protect them, and what steps to take. He assured them that the company would protect their rights, and directed them to pay no attention to the suit. Relying on said assurance, no defense was made to the suit, and no steps taken to pay off the incumbrance. Pursuant to decree, the property was sold, and said officer acquired legal title to the lots and claimed the land adversely to said lot owners. On this state of facts, the court held that by directing the lot owners to make no defense, but trust to the company, such officer voluntarily assumed a confidential relation and incapacitated himself to thus purchase the lots to the detriment of the lot owners, and that he took the property in the same situation it was in at the time he assured them that their rights would be protected. The court, in the syllabus, said:

"So, when a person obtains the legal title to property by virtue of a confidential relation and influence, under such circumstances that he ought not, according to the rules of equity and good conscience, to hold and enjoy the beneficial interests of the property, a court of equity, in order to administer complete justice between the parties, will raise a trust by construction and fasten it upon his conscience, and convert him into a trustee of the legal title, and order him to hold it, or to execute the trust in such manner as to protect the rights of the real party in interest."

*Hayne v. Hermann,* 97 Cal. 259, 32 Pac. 171, and *Gruhn v. Richardson et al.,* 128 Ill. 178, 21 N. E. 18.

From which we learn the doctrine, consonant with equity and good conscience, that, although one may be acting as agent for another in a transaction with a stranger, if said agent voluntarily assumes a confidential relation with the stranger, and at his ex-

pense takes gain to himself by violating the confidence reposed in him in virtue of that relation, equity will intervene and strip him thereof, and vest the title thereto in the party whose confidence he violated.

If a confidential relation is necessary to set up this trust, that such relation existed between Amos A. and John D. is clear; and this for the reason, among others, that they had agreed to become part owners in the purchase. It was only by Amos A. becoming such that John D. would consent to deal, and it was only in this relation that Amos A. gained his confidence and betrayed it. In *Robins v. Hope*, 57 Cal. 493, the court, quoting from 1 Story's Eq. Jur., said:

"The phrases 'confidential relation' and 'fiduciary relation' seem to be used by the courts and law writers as convertible terms. It is a peculiar relation which undoubtedly exists between 'client and attorney, principal and agent, principal and surety, landlord and tenant, parent and child, guardian and ward, ancestor and heir, husband and wife, trustee and *cestui que trust*, executors or administrators and creditors, legatees or distributees, appointer and appointee under powers, and partners and part owners. In these and the like cases the law, in order to prevent undue advantage from the unlimited confidence, affection, or sense of duty which the relation naturally creates, requires the utmost degree of good faith (*uberrima fides*) in all transactions between the parties.'"

In *Scattergood v. Kirk*, 192 Pa. 263, 43 Atl. 1030, quoting approvingly from Darlington's Estate, 147 Pa. 624, 23 Atl. 1046, 30 Am. St. Rep. 776, the court said:

"The confidential relation is not all confined to any specific association of the parties to it. While its more frequent illustrations are between persons who are related as trustee and *cestui que trust*, guardian and ward, attorney and client, parent and child, husband and wife, it embraces partners and copartners, principal and agent, master and servant, physician and patient, and generally all persons who are associated by any relation of trust and confidence."

In *Harraway v. Harraway*, 136 Ala. 499, 34 South. 836, the court said that "the number or character of the relations are not defined by law; all the variety of relations in which dominion

may be exercised by one person over another fall within the general term 'confidential relations.' "

In *Thomas v. Whitney*, 186 Ill. 225, 57 N. E. 808, the court, quoting from 2 Pom. Eq. Jur. sec. 947, said:

"The term 'fiduciary or confidential relation,' as used in this connection, is a very broad one. It has been said that it exists, and that relief is granted, in all cases in which influence has been acquired and abused, in which confidence has been reposed and betrayed. The origin of the confidence and the source of the influence are immaterial. The rule embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. The only question is, Does such a relation in fact exist?"

Or, as stated in 2 Pom. Eq. Jur. (3d Ed.) sec. 956:

"Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed."

We are therefore of opinion that the facts found are sufficient, in equity and good conscience, to make of Amos A. Ewing and wife trustees *ex maleficio* of a constructive trust, and that the judgment of the lower court should be affirmed; that is, if the wife, by knowledge of and participating in the fraud of her husband, is likewise chargeable as such trustee. On this there was, in effect, a finding adverse to her by the trial court, which the record amply sustains.

In *Moore v. Crawford, supra*, the court said:

"It is the settled doctrine of the court that where the conveyance is obtained for ends which it regards as fraudulent, or under circumstances it considers as fraudulent or oppressive, by intent or immediate consequence, the party deriving title under it will be converted into a trustee, in case that construction is needful for the purpose of administering adequate relief; and the setting up the statute of frauds by a party guilty of the fraud or misconduct, in order to bar the court from effective interference with his wrongdoing, will not hinder it from forcing on

his conscience this character as a means to baffle his injustice or its effects."

See *Logan v. Brown,* 20 Okla. 334, 345, 95 Pac. 441, 20 L. R. A. (N. S.) 298.

There is no merit in the contention that the court erred in admitting parol evidence, over objection, in proof of the agreement between John D. and Amos A. and his wife that the latter were to take a two-sevenths interest in the proposed purchase. On this point the court, in the case last cited, quoting approvingly from *Huxley v. Rice,* 40 Mich. 73, said:

"The fraud of which Moore was guilty was in preventing the conveyance to himself, which would have inured to Monroe, and in obtaining it to his wife, so as to reap the benefit which belonged to his grantee.  Mrs. Moore stands in her husband's shoes, and by accepting, with knowledge, is to be treated as a party to his fraud and profiting by it, or as a mere volunteer assisting him to perpetrate the fraud and to profit by it, and is hence to be held, as he could have been, a trustee *ex maleficio."*

The judgment of the trial court is affirmed.

DUNN, J., concur; HAYES and WILLIAMS, JJ., concur in the conclusion; KANE, J., dissents.