## Daniel McNary

*v.*

## Elizur Southworth.

1. **Buying in outstanding title,** *to intercept a rival equity.* One who, in good faith, makes a purchase of lands, and believes that he has acquired the legal title, may, on the discovery that he has not in fact acquired the legal title, strengthen his own title by buying in the legal title, and thus anticipate and cut off a rival equitable title equally meritorious with his own.

2. Bona fide purchaser. A remote purchaser, who derives title from a trust sale, wherein the trustee purchased at his own sale, and is ignorant of the irregularity and pays a reasonably adequate consideration to his vendor in possession, is entitled to be considered a *bona fide* purchaser as against one who, for a small consideration, buys in the supposed equity of redemption, several years after the trustee's sale.

3. Diligence—*as applied to equal equities.* Where equities are equal, a court of equity will not take from one an advantage he has acquired of his adversary by his superior diligence.

Appeal from the Circuit Court of Montgomery county; the Hon. Joseph Gillespie, Judge, presiding

In 1836, one Harris owned the premises in litigation, and attempted to convey the same to one Blair, but in the deed failed to name a grantee. This deed was recorded, and Blair went into possession, and subsequently conveyed to O'Connell. The latter gave a mortgage to Watson, with a power to sell at *public* sale; under this power, Watson conveyed to Crawford by a *private* sale. The latter, after occupancy for some time, reconveyed to Watson, and Watson sold to appellant; O'Connell sold to Southworth, and the latter filed a bill to redeem from the mortgage made by O'Connell to Watson, and for an account of the rents and profits of the land. While the action was pending, McNary obtained a quit claim deed from Harris, and complainant discovering it, filed a supplemental bill, praying for relief against that deed, also charging it to be a fraud upon his rights. At the hearing, redemption was decreed, and for an accounting for the rents and profits, and the deed from Harris to appellant was set aside. To reverse this decree, this appeal was prosecuted

Mr. A. N. Kingsbury, for the appellant.

Mr. G. B. Burnett, for the appellee.

Mr. Justice Thornton delivered the opinion of the Court:

This is a controversy as to the ownership of certain real estate. The purchase of appellant was prior in time, and he

paid for the property $310. Appellee paid $100. Both parties derive title from a common source—one O'Connell. In 1861, he mortgaged to one Watson, with the power to sell at public sale. In 1863, Watson conveyed to one Crawford, who reconveyed to Watson in 1864; and Watson, in 1864, sold and conveyed to appellant; O'Connell, in 1865, sold and conveyed to appellee. One Harris attempted to convey to Blair, but omitted to insert the name of the grantee in the deed, and Blair conveyed to O'Connell. During the pendency of the bill, appellant procured a deed from Harris.

The only question to be determined, is, was appellant a *bona fide* purchaser, and had he such an equity as to entitle him to buy in an outstanding title?

The sale to Crawford was private, but the proof does not show appellant had a knowledge of such irregularity. One witness testified, that appellant informed him he purchased of Watson, and that "Watson bought at a trustee's sale, he being the trustee." Another one testified, that he informed appellant of Watson's title.

Opposed to this, is the positive evidence of Crawford, that he purchased from Watson, also the mortgage, the trustee's deed to Crawford, and the occupancy of Crawford at the time of appellant's purchase.

Appellant had the right to infer, from the possession of Crawford and the chain of title, that the sale was regular, and in accordance with the power. The clear preponderance of evidence is, that appellant was a *bona fide* purchaser; he had no notice from the trustee's deed, or otherwise, that the sale was private. We therefore hold, that he was a purchaser in good faith, and without notice of the alleged irregularities.

How are the equities between the parties, prior to the procurement of the complete title by appellant? One has paid a fair consideration, approximating to the full value of the property as fixed by the witnesses. He purchased when every thing seemed fair and regular on the surface. The other paid only $100 for property, which, according to his own showing,

was worth $500, and from which all incumbrance had been removed. He is the grantee of O'Connell, who had slept upon his rights for four years, and neglected to pay the debt and redeem from the sale. His conduct has too much the appearance of speculation in a stale claim, to be entitled to a favorable hearing in a court of equity.

But concede that both parties had an equal equitable claim to the property, how are their rights affected by the subsequent deed from Harris to appellant? No fraud has been proved— no notice of facts has been brought to the knowledge of appellant, which would make his conduct *mala fide. Nixon* v. *Cobleigh,* 52 Ill. 387.

Both parties had the right to obtain this deed; each had the same notice of the defect in the deed to Blair. Can the right first acquired by appellant, be retained consistently with equity and good conscience? No rule is more familiar, than that a purchaser *bona fide* may buy in an outstanding title. It is founded upon principles of natural equity and morality. Appellant purchased in good faith, for a valuable consideration, and with the expectation of acquiring the property for which he paid, and he was justified in making his purchase good by the procurement of the legal title.

His claim to the protection of a court of equity, is as good as that of appellee to relief. As both the divine and human law rewardeth the diligent, equity will not interpose.

The decree is reversed and the cause remanded.

*Decree reversed.*