## MURRAY et al. v. SPEED et al.

No. 5442.   Opinion Filed November 16, 1915.

Rehearing Denied December 14, 1915.

(153 Pac. 181.)

1.   **EQUITY—Jurisdiction—Scope of Relief.** Where a court of equity has obtained jurisdiction of the controversy for any purpose, it will retain jurisdiction for the purpose of administering complete relief, and it may for this end determine purely legal rights which otherwise would be beyond its authority.

2.   **EXCHANGE OF PROPERTY—Fraud—Damages Recoverable.** Where the plaintiff and defendant agreed on an exchange of plaintiff's farm for certain town lots, which the parties examined, and the agreeement was that the farm should be exchanged for specific lots, examined by the parties, but by a mistake the deed was made for lots in another block, of less value than those agreed on, and before the mistake was discovered the defendant had sold the farm to a **bona fide** purchaser, for value and without notice, **held**, in an action to rescind the contract on the ground of fraud, that the plaintiff might recover, as damages, the difference between the value of the lots agreed on and those actually conveyed.

3.   **APPEAL AND ERROR—Prejudicial Error—Amendment to Petition.** Where it reasonably appears that a request to allow an amendment to the petition to be filed, so as to conform the allegations to the proof, was refused owing to an erroneous finding of

fact by the trial court, and where it also appears that such amendment would be proper in furtherance of justice, an order refusing to allow such amendment to be filed is prejudicial error. (Syllabus by Devereux, C.)

*Error from District Court, Beckham County; G. A. Brown, Judge.*

Action by J. R. Murray and another against H. K. Speed and another. Judgment for defendants, and plaintiffs bring error. Reversed and remanded for new trial.

The petition alleged, in substance: That on January 21, 1909, the plaintiffs in error were the owners of certain real estate in Beckham county, describing it, and that the defendant in error Speed was the owner of lots 39 to 44, inclusive, in block 1, Alta Vista addition to Oklahoma City, and that he desired to exchange these lots for the land in Beckham county belonging to the plaintiffs in error. That after discussing the trade, plaintiffs in error came to Oklahoma City with Speed for the purpose of ascertaining on what terms the exchange could be effected, and that on arriving in Oklahoma City, instead of showing the plaintiffs the lots above set out, he showed them other lots in block 2 in said addition, and falsely and fraudulently, and with intent to deceive them, represented that the lots he was showing them were the ones he proposed to exchange for the land of plaintiffs in error. That plaintiffs in error, believing the lots shown them by Speed to be the lots which were to be exchanged, and relying on his statement to that effect, agreed to the exchange, and about January 21, 1909, executed a deed to Speed for their land, and Speed executed to them a deed to certain lots in block 1 of the same addition. That plaintiffs did not know, and had no means of knowing, that the deed given them by Speed did not convey the

lots they had inspected, until after Speed had sold the Beckham county land. That the lots in Oklahoma City they inspected, and for which they intended to exchange their land, were valuable, but that the land actually conveyed by Speed was valueless. The petitioners also alleged that Harvey purchased the land from Speed with notice, tendered a deed for the lots conveyed, and prayed for a cancellation of the deed to Speed, and, in the alternative, that they recover damages in the sum of $1,500. The answer was a general denial.

The evidence tends to show: That the plaintiffs live in Beckham county, and knew nothing of the location of the lots and blocks in Oklahoma City, and that the defendant Speed also lived in Beckham county, and although he owned an interest in this land, he had never visited it until he came to Oklahoma City with the plaintiffs, and that he did not know where the lots and blocks were located. That on arrival in Oklahoma City, the parties went to the office of one J. W. Teams, who was a real estate agent, and who had formerly owned this land, and had caused it to be platted and had a plat thereof in his office, showing the lots and blocks on this land, which the parties consulted. After reaching the land, both parties, being ignorant of the location of the lots and blocks, looked at certain lots in block 2, which were level, good lots, and of considerable value. That they never examined the lots in block 1, afterwards conveyed to them by Speed, and Speed offered to exchange the lots they inspected in block 2 for their Beckham county land; that is, irrespective of lot and block numbers. Speed offered to trade the land they looked at for their land, neither party having reference to the lots afterwards deeded to

2—54

the plaintiffs in error.    While the lots at which the parties looked were level and of considerable value, those afterwards deeded were intersected by a ravine some 12 feet deep, and were of much less value, and the ravine also extended into the street in front of these lots.    For the purposes of the exchange, the plaintiffs' farm was valued at $2,500, and the lots which were intended by both parties to be conveyed in block 2 were valued at $1,420.    A short time after the lots were inspected, the exchange was made; the plaintiffs conveying their land to Speed, and he conveying to them the lots in the ravine, and not the lots which the parties had inspected.    At the time the parties inspected these lots, Speed did not know the number of the lots and blocks; but there is no evidence that before making the deed he took any steps to ascertain whether the land he was conveying was the land the parties had agreed on.    There was no evidence that Harvey was not an innocent purchaser for value and without notice.    After judgment the plaintiffs moved for leave to amend the petition so as to conform to the evidence, which was refused and exception saved.

There was a judgment for the defendants, and the plaintiffs bring the case to this court by petition in error and case-made.

*McAdams & Haskell, Hendrix & Tracy,* and *John B. Harrison,* for plaintiffs in error.

*D. B. Madden* and *T. R. Wise,* for defendants in error.

Opinion by DEVEREUX, C. (after stating the facts as above).    This being a case of equitable cognizance, this court has jurisdiction to examine the evidence and review the findings of fact of the trial judge *(Schock v.*

*Fish,* 45 Okla. 12, 144 Pac. 584; *Wimberly v. Winstock,* 46 Okla. 645, 149 Pac. 238), and in the statement of the case we have set out the facts as shown by a preponderance of the evidence. The court below made voluminous findings of fact, and one especially, that the allegation of mutual mistake was disproved by the evidence, we disaffirm, as this fact seems to be proved beyond a doubt. The trial court gave too much weight to the numbers of the lots and blocks, and lost sight of the fact that the parties examined the identical land, and the exchange was made for the specific land examined, without regard to its lot or block description. The argument of the defendants in error is not predicated on the fact that there was no mistake; but they contend that where both parties have equal means of information, and act in good faith, equity will not relieve against a mistake, and to support this proposition they cite numerous cases, among them *Grymes v. Sanders,* 93 U. S. 55, 23 L. Ed. 798, which holds:

"Mistake, to be available in equity, must not have arisen from negligence where the means of knowledge were easily accessible. The party complaining must have exercised at least the degree of diligence 'which may fairly be expected from a reasonable person.'"

But the facts in that case are so dissimilar to the case at bar that it cannot be considered as an authority, for the court says:

"The subsequent conduct of the appellees shows that the mistake had no effect upon their minds for a considerable period after its discovery, and then it seems to have been rather a pretext than a cause."

And again:

"When a party desires to rescind upon the ground of fraud or mistake, he must, upon the discovery of the facts, at once announce his purpose and adhere to it. If he be silent, and continue to treat the property as his own, he will be held to have waived the objection, and will be conclusively bound by the contract, as if the mistake or fraud had not occurred. He is not permitted to play fast and loose.'"

It is plain that the facts in that case are so different from those of the case at bar that the decision has no application.

The case of *Dunham v. Smith*, 15 Okla. 283, 81 Pac. 427, is in its facts very similar to the case at bar. In that case the defendant in error, Smith, brought a suit to recover damages from Dunham for having falsely and fraudulently shown her certain lots in block 28, Maywood addition, Oklahoma City, as being lots which they had for sale as agents of one Healy, and they fraudulently. induced her to accept a deed to lots in block 24 of the same addition; she believing that the deeds described the lots which had been shown her. The answer admitted that the wrong lots were shown her, and that the deeds covered other and different lots, but alleged that they acted in good faith in showing the lots in block 28, and that they believed at the time that such lots were the lots belonging to Healy, which they had for sale. The court say:

"The only proposition argued for a reversal of this case by plaintiffs in error is that a person cannot sue for damages by fraud, and recover by proving a mistake. We do not think this statement is literally true. As to whether a mistake constitutes a fraud or not depends entirely on the surrounding circumstances. If the mistake is one which the party making it, from his knowl-

edge of the facts, or from his position and opportunity of ascertaining the facts, could readily have discovered before making it, and he acted without due regard for the rights of the other party, and without proper caution to ascertain the truth of the statements made by him, and the other party relied upon these statements and was, thereby damaged, we do not think that the law would excuse such a false representation on the ground that it was a mistake. Now the evidence discloses in this case that the palintiffs in error were in the real estate business, and were presumed to know and understand the character of the business they were engaged in. * * * The plaintiff had a right to presume that they knew the exact location of the lots they were selling. The plaintiff not being in the same business, the same presumption would not apply to her as to her knowledge on the subject."

In the case at bar defendant Speed owned these lots, and the plat in Teams' office showed the lots and blocks. Admitting that he did not know the land by lots and block when he showed the plaintiffs in error the lots which he intended to exchange for their farm, common fairness required that before executing the deed he should examine the plat and ascertain if the lots they had selected were the lots he deeded. The plaintiffs, as in the Dunham Case, *supra*, knew nothing in regard to this land; they relied entirely on the good faith of Speed to convey to them the land which was specifically selected.

Rev. Laws 1910, sec. 904, provides that "constructive fraud" consists in any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice. Granting that Speed did not actually intend to defraud the plaintiffs, yet his conduct comes within this definition. The fact of the

numbers of the lots and block in this case was a matter within his knowledge, or which by the exercise of ordinary diligence he should have ascertained before making the deed. Instead of doing so, he makes a deed for lots worth very much less than those selected, and now refuses in any way to correct the mistake, and insists that he is entitled to keep the land of the plaintiffs in error in exchange for lots which they never agreed to exchange, and which are of very much less value than the land they owned, and of much less than the lots they examined. The case of *Dunham v. Smith, supra,* is wholly in point and governs this case.

There can be no question in this case that, although the main relief prayed for, the cancellation of the deeds and the restoration of the parties *in statu quo,* has been defeated, yet the plaintiffs are entitled to recover damages.

In *Cook v. Warner,* 41 Okla. 781, 140 Pac. 424, it is held:

"A court of equity which has obtained jurisdiction of the controversy on any ground or for any purpose will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject-matter, and to avoid multiplicity of suits."

In *Woodbury v. Marblehead Water Co.,* 145 Mass. 509, 15 N. E. 282, the action was to restrain the water company from maintaining its pipes on plaintiff's land. It appeared that the original description of the land was not sufficiently accurate for identification, and after the bill was filed the company made a new taking and filed a full and complete description of the land, with the exception of the names of the owners. Mr. Justice Holmes,

speaking for the court, held that the injunction could not be granted, but that the bill might he retained for the assessment of damages with reference to the injury before the lawful taking. And see, deciding the same question, *Salton Sea Cases,* 172 Fed. 792, 97 C. C. A. 214.

In *Camp v. Boyd,* 229 U. S. 530, 33 Sup. Ct. 785, 57 L. Ed. 1317, it is held:

"A court of equity ought to do justice completely, and not by halves. As a court of equity should prevent multiplicity of suits, it may, to this end, if obliged to take cognizance of a suit for any purpose, retain it for all purposes, even though this requires it to determine purely legal rights that are otherwise beyond its authority."

The record leaves it in doubt whether leave was ever granted to file an amendment to the amended petition so as to make the allegations thereof conform to the proof. At one part of the record it appears "thereafter, to wit, on the 7th day of February, 1913, the plaintiffs by leave of court granted to amend the petition to conform to the facts, filed their amendment to the petition," and the amendment follows this recital. However, after final judgment, an application was filed asking permission to file such an amendment, which was refused. It is probable that the last order was made on the erroneous finding of fact that no mistake had been made. However this may be, under the facts of this case, leave should have been granted the plaintiffs to amend their petition so as to conform to the evidence. Rev. Laws 1910, sec. 4790; *Ball v. Rankin,* 23 Okla. 801, 101 Pac. 1105; *Z. J. Fort Produce Co. v. Southwestern Grain & Produce Co.,* 26 Okla. 13, 108 Pac. 386; and *Robinson v. Stiner,* 26 Okla. 272, 109 Pac. 238.

We therefore recommend that the judgment be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.