**WEST v. MADANSKY.**

No. 9297—Opinion Filed Sept. 14, 1920.

Application to File 2nd Petition for Rehearing Denied Jan. 7, 1921.

Dissenting Opinion Filed Jan. 8, 1921.

(Syllabus by the Court.)

1. **Pleading—Misjoinder of Causes—Mode of Objection.**

Where a petition contains a misjoinder of causes of action the defect is raised by demurrer and not by motion to require the pleader to elect.

2. **Action — Misjoinder—"Distinct Cause of Action."**

The fact that a petition may show that plaintiff is entitled to relief, either in law or equity, because of a single wrong done to him by defendant, and the fact that he may pray for relief in law, if relief in equity be impracticable, do not constitute two distinct causes of action, nor render the petition defective for misjoinder.

3. **Equity — Scope of Relief—Rescission—Cancellation of Instruments.**

"Where a court of equity has obtained jurisdiction to cancel an instrument or rescind a contract, it will usually give complete relief in the premises." 3 Elliott on Contract, 2461.

4. **Action—Jurisdiction—Relief in Law or Equity.**

Under our statutes and the system of code pleading in this state, the district courts are endowed alike with the powers of a chancellor and a court of law, and where upon a given statement of facts, constituting but a single wrong, but which show the plaintiff entitled to relief, either in law or equity, and it is shown by the testimony that under the conditions it would be impracticable to render relief in equity, then the court will retain jurisdiction and grant such relief in law as, under the allegations and evidence, the plaintiff is entitled to receive.

5. **Tenancy in Common—Constructive Trust—One Tenant in Common as Agent for All.**

A fiduciary relation does not arise in law between tenants in common merely because of such common ownership, but when one of the tenants in common is created an agent for all the others for the express purpose of disposing of the interest of said tenants in common, and an assignment of the interest of said parties is made to said agent, in trust, in order to enable him to make an advantageous sale, then the law raises a trust relationship between such parties and such agent, and enjoins upon him the duty to act toward such parties, whose interests he holds in trust, with the utmost honesty and good faith.

6. **Equity—Maxims—"Equity Aids the Vigilant."**

It is a maxim of equity that the law will not take rights acquired by one who has been vigilant and give the benefit thereof to one who has lost by reason of nonaction.

Error from Superior Court, Tulsa County; M. A. Breckenridge, Judge.

Action by Max Madansky against O. N. West to cancel assignment of oil lease. Judgment for plaintiff, and both parties bring error. Modified and affirmed.

Dillard & Dillard, for plaintiff in error.

Davidson & Williams, for defendant in error.

HARRISON, J. This was an action to cancel an assignment of an oil and gas lease, or rather an assignment of a one-eighth interest in a certain lease, the grounds being that the assignment was obtained through fraud.

Max Madansky, plaintiff below, owned a one-eighth interest in an oil and gas lease on a certain tract of land in Tulsa county, viz., the S. W. ¼ of sec. 36, twp. 18 N., R. 12 E.

There were seven other parties, each of whom owned a one-eighth interest in said lease, among whom was O. N. West, defendant below, who, volunteering to act for all the interest-holders, represented to Madansky that the lease could be disposed of to a better advantage and for a better price by selling it all together; that if each of the interest-owners would assign his one-eighth interest to him and place such assignment in escrow in a bank, he would find a buyer and would assign the entire interest to such buyer. He further represented to Madansky that all the other interest-owners were willing to make such an assignment to him and would do so, and that when he found a buyer he would assign his interest, together with the interests of the other seven, to such buyer. He made several visits to Madansky for the purpose of obtaining Madansky's assignment, and of inducing Madansky to make the assignment, and in the course of such visits and in the course of the several conversations between him and Madansky he referred especially to certain wells that were being drilled some distance from their lease, and to the fact that one of said wells was only an 80-barrel well, and the other comparatively a dry hole, and that, therefore, their lease was not valuable and that he would be unable to get a good price for it; and upon such representations as to the depreciated value of the lease, and upon the representations that he and all the other parties were going to put in their interests and assign them all together, and thereby get a better price than by selling singly, Madansky was induced to and did assign his one-eighth interest to West, upon condition that if West found a purchaser for the entire lease, he, Madansky, should receive not less than $400 for his interest. Upon such understanding and agreement, Madansky made an assignment of his interest to West, and West placed same in escrow in a bank, with authority to assign same to a purchaser who was willing to pay not less than $400 for Madansky's interest.

Within a few days thereafter, West made a sale of six of the one-eighth interests in said lease to J. R. and C. C. Cole, and thereafter Madansky received $400 for his one-eighth interest.

It developed later that West received $4,000 and an agreement to drill a well on the land, in consideration for the interests he transferred to the Coles.

It developed, also, that West had not transferred the entire interest in the lease to the Coles, as he had led Madansky to believe he would do, but had transferred only six of the one-eighth interests, and had not transferred his own interest, nor the interest of one Phillips, who had not gone into the agreement, and at this time had not assigned his interest to West.

It also developed that a well, known as the Boesche well, had been brought in with a daily production of 800 barrels; that said well was only a quarter of a mile and 200 feet from the line of the lease in question; that West had never reported to Madansky nor said anything to Madansky about the Boesche well, but he had emphasized to Madansky the fact of the other two wells, one being only an 80-barrel well and the other comparatively a dry hole, both of which were some distance further away than the Boesche well.

The assignment from Madansky to West was made on the 26th day of April, the Boesche well was brought in on the 29th day of April, and about the 3rd or 4th of May, West made a sale to the Coles of six of the one-eighth interests, as above stated, receiving in consideration therefor $4,000. Upon learning these facts, Madansky brought suit against West for the cancellation of the assignment which he had made to West. The suit was filed August 5, 1916.

In the meantime a well had been brought in on the lease in question, daily production about 400 barrels at the time suit was brought and something over 200 barrels at the time the case was tried in January, 1917.

The cause was submitted to the court and judgment rendered in favor of the plaintiff, Madansky. The court held that there was sufficient evidence of fraud to warrant the cancellation of the assignments, but concluded that as Madansky's interest had been assigned by West to the Coles and subsequently by the Coles to the corporation known as Cole, Rudd & West, the identity of West's interest had become lost and merged in the corporation, and that the cancellation of the assignment would not afford the relief to which Madansky was entitled. But as West had assigned his one-eighth interest in the lease to the corporation, taking in consideration therefor a certain number of shares of

capital stock, the court rendered judgment in favor of Madansky for the capital stock owned by West in the corporation, not, however, for the full amount of what Madansky's one-eighth interest bore to the capital stock owned by West, but taking the view that each of the five other owners of a one-eighth interest had likewise been defrauded and that each was entitled to his proportionate share, if he should bring suit against West, rendered judgment decreeing Madansky only a one-sixth interest in the capital stock owned by West, reserving the other five-sixths interest for the other five leaseholders, in case they should see fit to bring suit.

From the judgment rendered, West appealed to this court, contending that the court erred in rendering judgment in favor of Madansky for any amount; also contending that Madansky's remedy was by an action for damages for deceit against defendant and by garnishment against the corporation after suit for damages was filed.

Madansky appealed also, and filed cross-petition in error, contending that the court erred in holding back any of West's stock for the five other interest-holders who were not parties to the suit, nor claimed any interest in the judgment, and that as Madansky had shown himself entitled to judgment, he was entitled to judgment for such portion of West's capital stock as West had received for a one-eighth interest in the lease instead of judgment for only a one-sixth portion of same.

The first proposition argued by West is that Madansky alleged two distinct and inconsistent causes of action, and that the court erred in overruling his motion to require Madansky to elect as to which cause of action he relied upon.

If in fact there were two distinct causes of action, inconsistent with each other, then the proper proceeding would have been by demurrer on the ground of misjoinder, and not by motion to elect. See Rev. Laws 1910, secs. 4740, 4741, and 4742. Also, C., O. & G. R. Co. v. Burgess, 21 Okla. 653, 97 Pac. 270, wherein it was held that misjoinder of causes of action should be raised by demurrer; and also Oates v. Freeman, 57 Okla. 449, 157 Pac. 74, wherein it is held that misjoinder of causes of action is properly attacked by demurrer, and not by motion to require plaintiff to elect, and that the defect is deemed to have been waived unless attacked by demurrer.

But we do not concede that plaintiff's statement of facts constituted two separate and inconsistent causes of action, and therefore cannot sustain the contention that there was a misjoinder.

West's contention in this regard is based upon the following: Madansky first filed his petition alleging that the assignment of his one-eighth interest to West had been obtained by fraud and that West had assigned it to the Coles, and that the Coles owned the entire lease, including the one-eighth interest formerly owned by West, and the one-eighth interest formerly owned by Madansky, wherefore he prayed for cancellation of the assignment of his interest to West and that he be decreed a one-eighth interest in the lease as then owned by the Coles.

West contends that this statement of facts and prayer for relief constituted one complete cause of action. And such contention is correct; the allegations in the first petition stated sufficient evidence of fraud to entitle him to a concellation of the assignment. But after Madansky had filed his petition as above stated, he moved for a receiver to take charge of the lease, and at the hearing for a receiver it developed that after acquiring the six one-eighth interests from West, the Coles organized a corporation under the name of Cole, Rudd & West, and assigned the entire six one-eighths interests to the corporation.

It developed also that neither the Coles nor the corporation had notice of the fraud perpetrated upon Madansky, hence were deemed innocent purchasers.

It developed also that after the corporation was formed West transferred his individual one-eighth interest in the lease to the corporation direct, and received therefor a one-eighth interest in the capital stock of the corporation. These facts having been brought out at the hearing for receiver, Madansky sought to amend his petition to conform to such facts, and did so amend, and prayed that if the court found that West did own a one-eighth interest in the lease, he should be given judgment against West for the amount of capital stock owned by West.

But West contends that the foregoing amendment constituted a cause of action separate and distinct from, and inconsistent with, the cause of action originally stated in his petition, and that therefore the court should have required him to elect which cause of action he relied upon; that is, whether he relied upon his first cause of action for relief by a cancellation of the assignment, or whether he relied upon the latter cause of action and for relief by a judgment for West's portion of the capital stock in the corporation.

We cannot agree that the fact that Madan-

sky's allegations of fraud were sufficient to entitle him to a cancellation of the assignment, if it developed from the evidence that West still owned a one-eighth interest in the lease, and that the amendment asked the court for judgment against West for the amount of capital stock owned by West, constituted two separate causes of action.

Madansky relied upon the same acts of fraud both in his petition and in his amendment, and upon the same acts of fraud he asked for a cancellation, if West still owned an interest in the lease, but if West did not own an interest in the lease but owned a like interest in the capital stock, then he asked judgment for the capital stock.

Section 4644, Rev. Laws 1910, defines an action as follows:

"An action is an ordinary proceeding in a court of justice by which a party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense."

Sections 4734, 4735, 4736, 4737, and 4738 very plainly provide what pleadings are necessary, what the pleading should contain in order to constitute a cause of action, and what causes of action may be joined in the same petition.

The terms "cause of action," "subject of action." "object of action," etc., and what constitutes a "cause of action," and when different "causes of action," may be united in the same petition, are clearly and fully discussed in Scarborough v. Smith, 18 Kan. 399, and in Stone v. Case, 34 Okla. 5, 124 Pac. 960.

Under the above authorities there were not two causes of action, and therefore no misjoinder. Madansky had but one grievance to complain of, one wrong that had been perpetrated upon him, one right that he had been deprived of by reason of the wrong perpetrated upon him, viz.: the right to a full enjoyment of his interest in the lease and to all of the proceeds from the sale of same. When he was deprived of this right, a wrong was perpetrated upon him. The wrong done to his right, the infringement upon his right, constituted in law "a subject of action." The **wrong** done to his **right**, the **infringement** upon his **right**, and the **relief** to which he was entitled, either in law or equity, constituted in law his "cause of action."

There was but one wrong committed and one wrong complained of, which was that he had been defrauded out of his interest in the lease; therefore there were not two causes of action. The fact that this wrong was of such a nature that the court in the exercise of its equity powers could grant relief if it found under the facts that West still owned a one-eighth interest in the lease, or the fact that such wrong was of such a nature that a court of law would grant proper relief if it developed from the evidence that West did not own a one-eighth interest in the lease but merely a proportionate interest in the capital stock, did not make two separate causes of action. His grounds for relief, either in law or equity, grew out of the one infringement upon his rights, and whether the court would grant equitable relief or relief under the law depended upon the facts disclosed by the evidence. If the evidence had disclosed that West still owned a one-eighth interest in the lease, then the court would have granted equitable relief by canceling the instruments of assignment and restoring him to his interest in the lease; but as the evidence disclosed that West had sold his interest in the lease to the corporation, thereby losing its identity, then the court in the exercise of its powers as a court of law could grant such relief as the facts warranted.

Section 4650, Rev. Laws 1910, provides:

"The distinction between actions at law and suits in equity, and the forms of all such actions and suits, heretofore existing, are abolished; and in their place there shall be, hereafter, but one form of action, which shall be called a civil action."

This section, construed in the light of sections 4644 and 4738, makes it clear that the one court, endowed alike with the powers of a chancellor and a court of law, has power to grant relief upon a statement of facts which constitutes a single wrong, and if the wrong be such as under the evidence the court can grant relief equitably, it will do so, and if it be such that relief is afforded under the law, then the same court will grant it in the same action.

Even under the procedure in courts of equity in states where distinctions between courts of law and courts of equity are maintained, where a court of equity properly acquires jurisdiction over the subject-matter and the parties, it retains jurisdiction until complete relief is granted according to the facts in the case.

"If a court of equity obtains jurisdiction of a suit for the purpose of granting some distinctively equitable relief, such, for example, as the specific performance of a contract, or the rescission or cancellation of some instrument, and it appears from facts disclosed on the hearing, but not known to the plaintiff when he brought his suit, that the special relief prayed for has become impracticable, and the plaintiff is entitled to the only alternative relief possible of damages, the court

then may, and generally will, instead of compelling the plaintiff to incur the double expense and trouble of an action at law, retain the cause, decide all the issues involved, and decree the payment of more compensatory damages." 1 Pom. Equity (3rd Ed.) 342.

Again, on page 354, Id., in discussing the effect of the reformed statutes of pleading, that is, the adoption of the statutes of Code pleading and powers given therein, the author says:

"That system of procedure, by combining the actions at law and suits in equity into one 'civil action,' by permitting the union of legal and equitable primary rights, and interests, and causes of action in the one judicial proceeding, and the granting of legal and equitable remedies in the one judgment, and by the substitution of many equity rules concerning the. prosecution of suits in place of the arbitrary rules of the law regulating the conduct of actions, has greatly enlarged the operation and increased the efficiency of the general doctrine under discussion. Wherever the true spirit of the reformed procedure has been accepted and followed, the courts not only permit legal and equitable causes of action to be joined, and legal and equitable remedies to be prayed for and obtained, but will grant purely legal reliefs of possession, compensatory damages, pecuniary recoveries, and the like, in addition to or in place of the specific equitable reliefs demanded in a great variety of cases which would not have come within the scope of the general principle as it was regarded and acted upon by the original equity jurisdiction, and in which, thereafter, a court of equity would have refrained from exercising such a jurisdiction."

Also Murray v. Speed, 54 Okla. 31, 153 Pac. 181; 1 C. J. 616; Elliott on Contracts, 2461.

Therefore the court had power to grant such relief as, under the facts, the parties were entitled to receive. The facts clearly show a trust relationship between West and the other interest-holders, including Madansky.

West's representations to Madansky that all of the other interest-holders had agreed to and would assign their interests to him, and that he could dispose of the entire lease to a better advantage and for a better price to each interest-holder by selling it all together in one sale than by selling such interest separately, and that he would put his interest in with the rest and dispose of all together in one sale, were the inducements which moved Madansky to place his interest in West's hands, and being moved by such inducements to do so, he executed an assignment of his one-eighth interest to West, trusting in West to do as he had promised to do, dispose of the entire lease and all interests therein in one transaction. This placing of his interest in West's hands for disposal, trusting in West to dispose of same at the best price obtainable, and West's acceptance of same under said conditions created a relationship between West and Madansky which the law denominates fiduciary, and it enjoins upon the trustee in such case the duty to act toward those whose interests he holds in trust with the utmost honesty and good faith. Thomas v. Thomas, 27 Okla. 784, 109 Pac. 825; Perry on Trusts (4th Ed.) sec. 177, vol. 1; 2 Pom. Equity (3rd Ed.) secs. 956 and 957; Story's Equity Juris. (13th Ed.) sec. 248; Allen v. Jackson (Ill.) 13 N. E. 840; Hayne v. Herman (Cal.) 32 Pac. 171; Ewing v. Ewing, 33 Okla. 414, 126 Pac. 811; Harraway v. Harraway (Ala.) 34 South. 836; Thomas v. Whitney (Ill.) 57 N. E. 808; Tennant v. Dunlop (Va. App.) 33 S. E. 620; 30 Cyc. 557, and authorities cited.

And where West, after promising to sell the eight interests all together, sold only six of them for $4,000, withholding his own one-eighth interest and Phillip's one-eighth interest, Madansky was entitled to one-sixth of the $4,000.

The evidence is too meager and indefinite as to the extent of Madansky's damages and as to the exact interest individually owned by West to sustain the judgment against West for one-eighth of the capital stock of the corporation, and the court erred in so holding. The court erred also in reserving or holding back five-sixths of the judgment for those who had not brought suit and claimed no rights in the premises nor any interest in the judgment. So far as the record discloses, the other five interest-holders who assigned to West were not complaining. So far as the record discloses, they were not defrauded, or, if defrauded, had been reimbursed or compensated. Had these other interest-holders come into court and shown that they had been defrauded and asked for relief, and it had developed that West had no other property than the capital stock which he had received for a one-eighth interest in the lease, it would then have been proper for the court to protect the interests of the parties alike; but as these parties had not brought suit, had made no complaint, and so far as the court knew had not been defrauded, and Madansky having brought suit and prosecuted same with diligence, and shown himself entitled to judgment, then he was entitled to such judgment as would compensate him for his losses. "Equity aids the vigilant, not those who slumber on their rights." 16 Cyc. 140; Burnham v. Hickman (Mo.) 51 S. W. 680; McNary v. Southworth, 58 Ill. 473; Dell School v. Pierce (N. C.) 79 S. E. 687.

The judgment of the trial court is therefore modified and judgment herein rendered in favor of defendant in error, Madansky, against plaintiff in error, O. N. West, for one-sixth of $4,000, less the $400 already received by Madansky, with interest thereon at the rate of 6 per cent. per annum from date of sale by West to Cole until paid, and for costs of suit, and it is so ordered, modified, and rendered.

RAINEY, C. J., and KANE, PITCHFORD, JOHNSON, McNEILL, HIGGINS, and BAILEY, JJ., concur; RAMSEY, J., not participating.

----

McNEILL, J. (dissenting). I agree with the law and findings of fact as stated in the opinion of the majority, but am unable to agree that the plaintiff is granted the proper relief according to the law and facts as stated. A very brief summary of the facts and pleadings will be necessary to state my position.

The plaintiff filed his petition in the superior court of Tulsa county on the 5th day of August, 1916, alleging that he was the owner of an undivided one-eighth interest in a certain oil and gas lease, and the defendant and other parties were the owners of the balance of the lease, each owning a separate and undivided portion thereof. That the defendant, West, by virtue of a confidential relation existing between plaintiff and defendant, and certain false and fraudulent representations, on the 26th day of April, 1916, obtained an assignment to himself of plaintiff's one-eighth interest in said oil and gas lease. It is also alleged that the defendant obtained the assignment from the owners of other interests in said lease at about the same time and held in his name the purported title to seven-eighths of said oil and gas lease. That on the 4th day of May, 1916, the defendant sold and assigned an undivided five-eighths interest in the oil and gas lease to J. R. Cole and C. C. Cole, retaining to himself an undivided two-eighths interest in said oil and gas lease. To the petition was attached the assignment dated May 4, 1916, which contained the following statement:

"The said O. N. West does by these presents sell, convey, set over and assign unto J. R. Cole, Jr., and C. C. Cole in equal proportions all of his right, title and interest in and to a five-eighths undivided interest in and to said oil and gas lease * * * held by the said O. N. West, and the said J. R. Cole, Jr., and the said C. C. Cole, in the following proportions, to wit: The said O. N.

West has a two-eighths interest therein. The said J. R. Cole, Jr., owns a three-fourths interest and the said C. C. Cole owns a three-eighths interest."

The petition contained the further allegation:

"The plaintiff avers that this plaintiff is entitled to and is the owner of an undivided one-eighth interest in and to said oil and gas mining lease, and that said one-eighth interest is included in and is a part of the nine thirty-seconds interest now held by the said defendant. The plaintiff avers that if it should be true that said defendant West has disposed of and sold and transferred the undivided one-eighth interest which he fraudulently obtained from this plaintiff as hereinabove set forth, that this plaintiff is entitled to an undivided one-eighth interest in the whole forty acres of land in and to said oil and gas lease out of the aforesaid undivided nine thirty-seconds interest now held by the defendant."

At the time of filing the petition, the plaintiff filed an application for appointment of receiver, and upon notice testimony was taken, and the evidence at said hearing disclosed that West had transferred certain interests in the lease to his brother and that the Coles had transferred a certain interest in the lease to Mr. Rudd, and that all the parties thereto had organized a corporation, known as Cole, Rudd & West, Inc., with a capital stock of $5,000, each party assigning the interest he owned in the lease to the corporation for a corresponding amount of the capital stock of the corporation. At this time West had a one-eighth interest in the lease and was to receive one-eighth of the capital stock of the corporation. His brother had a one-eighth interest and he likewise was to receive an undivided one-eighth of the capital stock. The record does not disclose the date of the assignment of the lease to the corporation, but the first meeting of the stockholders was held August 3rd, or two days before the filing of this suit. Plaintiff then filed a supplemental petition setting out said facts, and prayed as follows:

"Wherefore, the plaintiff prays as in his original petition, and further prays that if the court should be of the opinion that said O. N. West now owns a one-eighth interest in said company and not merely in the oil and gas lease, that the plaintiff's interest in said company be placed in the hands of a receiver."

The court, upon application for a receiver, made the following order:

"It is therefore ordered that the Gulf Pipe Line Company shall pay to Cole, Rudd & West, Incorporated, all of the proceeds of the oil run from said lease in which the said O. N. West may have been interested prior to the sale of said property to the said Cole,

Rudd & West, Incorporated, or which the interest of said West by reason of his ownership of stock in said corporation may be entitled to, including such interest in said fund as the plaintiff is claiming until the further order of the court. To so much of the above as directs payment to Cole, Rudd & West of any of money for oil plft. excepts.

"It is further ordered that the said West be restrained from transferring, selling, assigning, pledging, or in any manner incumbering his stock in said corporation until such time as the court may hand down its decision in said matter or until a further hearing of said matter."

Thereafter the defendant filed his answer and alleged that he had transferred one-eighth interest in the oil and gas lease to the corporation known as Cole, Rudd & West, Incorporated, and he was to receive therefor one-eighth of the capital stock of the said company, but the certificate of stock had not been issued to him. The answer also contained a further defensive matter which it is not necessary for me to mention, as the trial court found against those contentions, and the majority opinion sustains the trial court as to those matters. Thereafter the case was tried to the court, and at the time of the trial the property had been sold by agreement of all parties, and the proceeds of the sale as to the one-eighth interest that West had transferred to the corporation, or the proceeds of the one-eighth of the capital stock, was held by the purchaser by agreement of the parties to await the final determination of this controversy. The statement of the parties concerning this sale appears in the record as follows:

"Judge Dillard: It is understood between counsel, and an agreement made, when the property is sold, the agreement in writing, the agreement to be made in writing, that when the property is sold it shall stand in the place of a supersedeas bond and that neither side will be required to give a supersedeas bond, but the funds will remain as provided in that agreement until the final determination of this suit.

"Judge Williams: The agreement in writing referred to is the selling of this property mentioned to the Gypsy Oil Company, by all the parties, Cole-Rudd-West Corporation."

After hearing the case, the court found that a confidential relation existed between Madansky and West, and that the assignment was obtained by West from Madansky by false and fraudulent misrepresentations and that the one-eighth interest of West passed to the corporation subject to the right Madansky had against said lease and leasehold estate. The court found that the transfer of one-eighth interest held by O. N. West

and the one-eighth interest of the lease held by his brother, S. C. West, and assigned to the corporation for one-eighth of the capital stock, was held in trust for Madansky and that Madansky was entitled to recover one-sixth of the said two-eighths of the interest in the lease held by O. N. West and S. C. West. The court further found as to the status of the property as follows:

"It further appearing that the corporation known as Cole, Rudd & West, Inc., have sold said oil and gas lease under an agreement executed by both the plaintiff and the defendant as well as the other stockholders in said corporation, by which the funds were to be held pending the final adjudication of this suit, the court finds that said matter under said agreement will remain in statu quo pending the final determination of this cause, and that it is not necessary for either party to give supersedeas bond."

Both sides filed a motion for new trial. Attorneys for West filed motion for a new trial presenting the exact questions that have been decided by this court in the majority opinion against him. Attorneys for Madansky contend that he was entitled to full relief as against West, and entitled to receive one-eighth of the lease, or if the lease had been transferred to the company for one-eighth of the capital stock, he was entitled to receive one-eighth of the capital stock. The trial court, in rendering judgment for Madansky for only one-sixth of two-eighths interest held by West and his brother, did so upon the theory that West held two-eighths of the entire amount of the lease, or capital stock, and West had defrauded plaintiff and five other parties of their interest, and the other five parties who were not parties to the suit would be entitled to recover a one-sixth of the amount held by West and his brother, West being insolvent, and that West should hold the other five-sixths of the two-eighths interest upon the theory that he might respond to the other parties if they should commence suit. The majority opinion holds the trial court committed error in so doing, and states as follows:

"It is a maxim of equity that the law will not take rights acquired by one who has been vigilant and give the benefit thereof to one who has lost by reason of nonaction."

I agree with this contention. Then, as a matter of law, what relief is Madansky entitled to? The relief Madansky prayed for was the return of his one-eighth interest in the oil and gas lease. The relief the party is entitled to in a suit in equity to rescind a contract is stated in Elliott on Contracts, vol. 3, par. 2460, as follows:

"In a suit in equity to rescind a contract, the court proceeds on the principle that as

the transaction ought never to have taken place, the parties are to be placed as far as possible in statu quo, and will require each to restore to the other what he obtained by virtue of the contract."

The same rule was announced by this court in the case of Murray v. Speed et al., 54 Okla. 31, 153 Pac. 181, as follows:

"Where a court of equity has obtained jurisdiction of the controversy for any purpose, it will retain jurisdiction for the purpose of administering complete relief, and it may for this end determine purely legal rights which otherwise would be beyond its authority."

It was also held in the case of Cook v. Warner, 41 Okla. 781, 140 Pac. 424, as follows:

"A court of equity which has obtained jurisdiction of the controversy on any ground or for any purpose will retain such jurisdiction for the purpose of administering complete relief and doing entire justice with respect to the subject-matter, and to avoid multiplicity of suits."

The same principle was announced in the case of Bruner v. Miller (W. Va.) 52 S. E. 995, as follows:

"On rescinding a contract, the court should, by its decree, put the parties in statu quo, by requiring each to restore to the other what he obtained by virtue of the contract."

The Supreme Court of the United States, in the case of Camp v. Boyd, 229 U. S. 530, 57 L. Ed. 1317, held:

"A court of equity ought to do justice completely and not by halves. As a court of equity should prevent multiplicity of suits, it may, to this end, if obliged to take cognizance of a suit for any purpose, retain it for all purposes, even though required to determine purely legal rights otherwise beyond its authority."

The trial court found that the assignment of the lease was obtained by fraud. This finding is supported by the majority opinion. If we apply the rule announced in the decisions above cited, the court should grant complete relief and place the parties as nearly as possible in statu quo and require each to restore to the other what he obtained by virtue of the contract. The judgment of the trial court, according to the opinion of the majority, should be for Madansky to recover his undivided one-eighth interest in and to the oil and gas lease, unless it can be said that the transfer of the one-eighth interest to the corporation for one-eighth of the capital stock of the corporation would prevent this recovery. If the defendant is unable to restore one-eighth of the lease, he is able to restore what he obtained from the lease to wit, one-eighth of the capital stock. Upon this question the trial court stated as follows:

"I think under the testimony that if the plaintiff is entitled to recover at all it would be from the stock. I don't know about the land, the leasehold itself, as merged into a corporation, but in whatever form it might be found, if plaintiff is entitled to recover, in whatever form it might be found in the hands of the defendant, he would be entitled to take it in that form."

I think the statement of the trial court is in exact accord with the third paragraph of the syllabus of the opinion in this case, which the majority has found to be the law. It is immaterial whether the recovery should be for one-eighth of the lease or one-eighth of the capital stock of the corporation, for the reason during the trial of the case the whole property was sold by agreement of the parties as disclosed by the record heretofore set out. This, in my judgment, makes it unnecessary for the court to determine whether the recovery should be for the lease or for the capital stock, as the parties themselves have eliminated that question by agreeing that the property should be sold and the proceeds of the sale should be held to await the determination of this case. If we give the plaintiff full relief, is he not entitled to the proceeds of the sale of the interest over which the parties were litigating?

I agree with the opinion of the majority, but contend that after finding the property was obtained by fraud, and a trust relation existed between the parties, and announcing the law that a court of equity would grant complete relief, and the further rule that a court of equity would aid the vigilant and not those who slumbered on their rights, the judgment should be for the proceeds of the sale of this one-eighth interest which the parties were litigating over. It does not seem to me that a court of equity properly administers justice where it finds that property has been obtained by false and fraudulent representations between parties and then permits the party who has acquired the property by fraud to retain all of the profits by virtue of said transaction.

For the reasons stated, I dissent from the judgment in the case, but not from the majority opinion, nor the syllabus announced in the opinion. I agree with the majority as to each paragraph of the syllabus announced, but disagree as to the relief granted.

I am authorized to state that Mr. Justice JOHNSON concurs in this dissenting opinion.